PEOPLE v PAULUS

Docket No. 55931. Submitted March 4, 1982, at Lansing.—Decided
     April 8, 1982.

　　Franklin C. Paulus was convicted, on his plea of guilty, of
     attempted obtaining money under false pretenses, Oakland
     Circuit Court, Robert B. Webster, J. Prior to the proceedings
     involved herein the defendant had been incarcerated in a
     federal facility on an unrelated offense. He was brought to
     Oakland County on a writ of habeas corpus for arraignment on
     another charge, was returned to the federal facility which was
     sent a card labeled "detainer", and was later returned to
     Oakland County pursuant to another writ of habeas corpus and
     remained there until he entered a guilty plea. He later was
     allowed to withdraw the plea and he subsequently pled guilty
     to an added charge, from the conviction on which he now
     appeals. Defendant alleges that Oakland County was deprived
     of jurisdiction because of violations of the Interstate Agreement
     on Detainers. *Held:*

　　1. The first writ of habeas corpus issued to secure the
     defendant's presence for arraignment was similar to a writ *ad
     prosequendum* and was not a detainer for purposes of applica-
     tion of the Interstate Agreement on Detainers.

　　2. The only document which could be considered to be a
     detainer was the card labeled as such which was sent to the
     federal authorities.

　　3. There was no violation of the agreement's requirement
     that a prisoner be brought to trial within 180 days of the
     lodging of a detainer because most of the delay in this case was
     for good cause and was attributable to the defendant. There
     likewise was no violation of the requirement that the defendant
     be brought to trial within 120 days of his transfer to the
     receiving state.

　　4. Because the only document which could be considered to

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law § 404 *et seq.*
[3] 21 Am Jur 2d, Criminal Law § 405.
[4] 21A Am Jur 2d, Criminal Law § 659.

be a detainer was the card, and because the defendant was later transferred to Oakland County and remained there until after he entered his first guilty plea, there was no violation of the requirement that a defendant, having been transferred pursuant to the agreement, must be tried before being returned to the place of original incarceration.

Affirmed.

1. PRISONS AND PRISONERS — INTERSTATE AGREEMENT ON DETAINERS.

The Interstate Agreement on Detainers may be applied to a prisoner only after a detainer is filed with the custodial state by the state having untried charges pending against the prisoner (MCL 780.601; MSA 4.147[1]).

2. PRISONS AND PRISONERS — DETAINERS.

A detainer is a notification filed with the institution in which a prisoner is serving a sentence advising that he is wanted to face pending criminal charges in another jurisdiction; such notification need not be a formal document.

3. PRISONS AND PRISONERS — INTERSTATE AGREEMENT ON DETAINERS — WRIT AD PROSEQUENDUM.

A writ *ad prosequendum,* which serves to bring a prisoner into court, is not a detainer for purposes of the Interstate Agreement on Detainers (MCL 780.601; MSA 4.147[1]).

4. PRISONS AND PRISONERS — INTERSTATE AGREEMENT ON DETAINERS — DELAY OF TRIAL.

The requirements of the Interstate Agreement on Detainers, that a prisoner be brought to trial within 180 days of the lodging of a detainer and within 120 days of his transfer to the receiving state, are not violated where, although he is not brought to trial within those time restraints, the delay is for good cause and is attributable to the defendant (MCL 780.601; MSA 4.147[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *James L. McCarthy,* Assistant Prosecuting Attorney, for the people.

*James R. Porritt, Jr.,* for defendant on appeal.

Before: M. F. Cavanagh, P.J., and Allen and E. C. Penzien,* JJ.

Per Curiam. In this appeal from defendant's conviction of attempted obtaining money under false pretenses, MCL 750.92; MSA 28.287, MCL 750.218; MSA 28.415, defendant challenges the court's jurisdiction to accept his guilty plea, alleging that jurisdiction was lost through violations of the Interstate Agreement on Detainers (IAD), MCL 780.601; MSA 4.147(1).

In May, 1979, defendant was charged with receiving and concealing a stolen automobile with the intent to transfer title, and he was arrested and lodged in the Oakland County jail. He was, however, transferred to federal custody for sentencing on an unrelated charge and, on May 31, 1979, was sentenced to two years imprisonment, to be served "forthwith". Defendant remained at Milan until June 12, 1979, when he was returned to Oakland County for arraignment on the stolen auto charge pursuant to a writ of habeas corpus issued June 11, 1979, to bring up the prisoner for arraignment.

After the arraignment June 12, 1979, defendant was returned to Milan. With him, Oakland County sent a 3 × 5 card labeled "detainer", which stated that defendant was charged with receiving and concealing property in Oakland County. Defendant remained at Milan until July 9, 1979, when he was brought to Oakland County pursuant to a writ of habeas corpus filed on July 7, 1979. Defendant remained incarcerated in Oakland County until he offered a guilty plea on January 7, 1980. He was sentenced to a delayed one-year term.

On October 1, 1980, defendant moved to with-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

draw his guilty plea and the prosecution agreed that defendant should be allowed to do so. Defendant then pleaded guilty to an added count of attempted receiving and concealing stolen property and was sentenced to one year in jail, with credit for 455 days served. He appeals by right.

Defendant contends that two violations of the IAD deprived the Oakland County Circuit Court of jurisdiction to accept the plea. First, he argues that the Article III and Article IV protections for a speedy trial were violated and, second, he maintains that Article IV(e) was violated when he was returned to Milan June 12, 1979, without having been tried. We have examined these claims and find compliance with the IAD.

The IAD can be applied to a prisoner only after a detainer is filed with the custodial state by the state having untried charges pending against the prisoner. *United States v Mauro,* 436 US 340, 343-344; 98 S Ct 1834; 56 L Ed 2d 329 (1978). We therefore must determine if a detainer was filed against the defendant and, if so, when, before we can examine the merits of defendant's claims.

The IAD itself contains no definition of a detainer, but this Court has recognized that a detainer is a "notification" filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction. *People v Browning (On Rehearing),* 108 Mich App 281, 290; 310 NW2d 365 (1981). The detainer serves to notify the custodial state to hold the prisoner or to inform the requesting state of the prisoner's impending release. The United States Supreme Court has held that, for IAD purposes, a detainer should not be interpreted as including a writ *ad prosequendum,* as the writ serves a much different purpose, that of bringing a

prisoner into court. *United States v Mauro, supra,* 361.

In the case at bar, three documents were involved in securing the defendant's presence in Oakland County. The first, the writ of habeas corpus issued June 11, 1979, to bring the defendant to court for arraignment purposes, is similar to a writ *ad prosequendum*—it merely secures the immediate presence of a defendant at court and does not interrupt the rehabilitative process. Accordingly, we believe that the lower court correctly found that this writ was not a detainer for purposes of the IAD. Accordingly, the IAD did not apply at the time the defendant was removed to Oakland County for arraignment.

The second document is the $3 \times 5$ card filed by Oakland County after defendant was arraigned and returned to Milan. This document, labeled a "detainer", was found by the lower court to be a detainer for purposes of the IAD. The court noted that Milan corrections officials had testified that the federal corrections authorities would treat such a document as a formal detainer. This is consistent with this Court's recognition that a detainer need not be a formal document. *People v Beamon,* 83 Mich App 121; 268 NW2d 310 (1978), *People v Browning (On Rehearing), supra.*[1] We therefore assume, for purposes of argument, that the $3 \times 5$ card filed June 15, 1979, was a detainer for purposes of the IAD.

[1] We observe that the question of whether this document was a detainer was also litigated in a federal habeas corpus action, *Paulus v Civiletti* (Docket No. 79-73340, ED Mich, 1980), and in that action the federal court determined that the $3 \times 5$ card did not constitute a detainer. This finding was based on evidence that the Milan officials would not treat the card as a detainer. The prosecution asks that we apply collateral estoppel and rule that the federal holding is binding on the defendant. We decline to do so in this case, but instead assume, *arguendo,* that a detainer was filed when the card was given to Milan officials.

The third document is a writ of habeas corpus to bring the prisoner to trial, filed July 7, 1979. Pursuant to this writ, defendant was delivered to Oakland County officials, where he remained until he offered his first guilty plea in this case, January 7, 1980. We believe that the writ in this case, like the writ *ad prosequendum* in *Mauro,* operated as a written request for temporary custody of the prisoner.

We first consider defendant's claim that the IAD provisions relating to a speedy trial were violated. Two articles of the IAD insure speedy disposition: Article III(a) requires a prisoner to be brought to trial within 180 days after a defendant has filed a written request for final disposition of his case, and Article IV(c) requires that trial begin within 120 days after defendant's arrival in the receiving state.

Defendant filed several requests for speedy trial with the lower court in this case, although there is no evidence in the record that he complied with the specific requirements for filing with his warden a written request for final disposition of the case pursuant to Article III. *Edmond v Dep't of Corrections,* 78 Mich App 196; 259 NW2d 423 (1977). Even assuming that these procedures were followed, we do not believe that any violation of the 180-day rule occurred as most of the delay was for good cause and was attributable to the defendant.

On August 7, 1979, defendant filed a motion to dismiss based on the alleged violation of Article IV(e) of the IAD. A continuance was granted, with the defendant and his attorney being present in court, on November 1, 1979, to permit counsel to file briefs on this issue. Additional delays were occasioned by defendant's request for substitution of attorneys and the continuance granted pursuant

to that request. We also note that defendant's attorney moved to withdraw on December 2, 1979, that defendant filed a motion to dismiss his attorney on December 11, 1979, and that defendant repeatedly moved to have the case assigned to a different judge. These many motions by the defendant within 180 days of the filing of the $3 \times 5$ "detainer" which was the earliest possible time defendant could have requested final disposition, prevent this Court from finding any violation of the 180-day rule.

We likewise find that there was no violation of Article IV(c)'s requirement that the trial begin within 120 days of defendant's arrival in the receiving state. The various motions filed by defendant after he was returned to Oakland County on July 9, 1979, extended the 120-day period well beyond the date of defendant's initial guilty plea.

Finally, we do not believe there was any violation of Article IV(e), which requires a defendant to be tried before being returned to the custodial state once he has been removed to the receiving state pursuant to the IAD. The IAD did not operate to protect the defendant until after defendant was arraigned, as nothing that could be considered a detainer was filed until June 15, 1979, when the $3 \times 5$ card labeled "detainer" was given to Milan officials. Defendant was sent to Oakland County pursuant to written request for custody, the writ of habeas corpus to testify at trial, on July 9, 1979, and was not returned to Milan until after his initial guilty plea was entered. This factual situation is distinguishable from that in *United States v Ford,* 436 US 340; 98 S Ct 1834; 56 L Ed 2d 329 (1978), for in that case a detainer was filed *before* federal authorities turned the prisoner over to state officials for arraignment. Here, where defen-

dant remained in Oakland County after both the detainer and the request were filed, the lower court correctly found that no violation of the Interstate Agreement on Detainers occurred.

As we do not believe there was any violation of the agreement, we do not find it necessary to determine whether the defendant's guilty plea waived a violation.

Affirmed.