PEOPLE v BENTLEY

Docket No. 58756. Submitted June 30, 1982, at Lansing.—Decided
November 3, 1982. Leave to appeal denied, 417 Mich 877.

   Murray J. Bentley was convicted of perjury, Midland Circuit
   Court, Peter D. O'Connell, J. Subsequent to his preliminary
   examination on the perjury charge in Midland District Court,
   the defendant was bound over to the circuit court for a trial.
   The defendant failed to appear in circuit court and a bench
   warrant for his arrest was issued. Thereafter, the defendant
   was convicted, on his pleas of guilty, of five counts of credit
   card fraud in Maui, Hawaii. He was sentenced to 5 years
   probation with 12 months to be served in the Maui Community
   Correctional Center. After being notified of the defendant's
   guilty pleas in Hawaii, a Midland County assistant prosecuting
   attorney informed the administrator of the Maui Correctional
   Center that he wished "to place a hold" on the defendant and
   asked the administrator to contact the Midland County prose-
   cutor's office at least one month prior to the defendant's release
   from the Maui facility. Four days prior to the expiration of his
   jail sentence in Hawaii, the defendant was released and two
   bondsmen from Michigan immediately seized him and took him
   to Midland to face the perjury charges. The defendant moved to
   quash the information charging him with perjury alleging that
   provisions of the Interstate Agreement on Detainers had not
   been complied with. That motion was denied and the defendant
   was convicted of perjury. The defendant appeals alleging that
   his conviction should be reversed because of noncompliance
   with the Interstate Agreement on Detainers. Held:

      There was a detainer filed against the defendant in Hawaii
   by the Midland County prosecutor's office. The prosecutor's
   office did not sustain its burden of establishing that the Hawai-
   ian officials complied with the provisions of the Interstate
   Agreement on Detainers which both Michigan and Hawaii had

REFERENCES FOR POINTS IN HEADNOTES

[1-6] 21 Am Jur 2d, Criminal Law §§ 404-407.
   21A Am Jur 2d, Criminal Law §§ 658, 858.
   Validity, construction, and application of Interstate Agreement on
      Detainers. 98 ALR3d 160.

adopted. Here, the burden of the Hawaiian officials' failure to inform the defendant of the filing of the detainer and of his right to request final disposition of the perjury information should fall on the Midland County prosecutor because the prosecutor did not make the slightest effort to assure that the defendant was informed of the detainer or of his right to request a final disposition. After the filing of the detainer, the prosecutor took no action whatsoever under the IAD but simply allowed the defendant to remain in the Hawaiian facility for eight months until his release and apprehension by bondsmen. The Court of Appeals declined to hold that a prosecutor of a receiving state must always bear the burden of the custodial state's noncompliance with the provisions of the IAD or that dismissal is always the proper remedy for violation of the IAD. Here, however, the defendant's conviction of perjury should be reversed.

Reversed.

1. Criminal Law — Interstate Agreement on Detainers.

The purpose of the Interstate Agreement on Detainers is to eliminate the shuttling of prisoners back and forth between jurisdictions and to encourage the expeditious and orderly disposition of charges outstanding against prisoners (MCL 780.601; MSA 4.147[1]).

2. Criminal Law — Interstate Agreement on Detainers.

The provisions of the Interstate Agreement on Detainers are triggered only when a detainer is filed with the state where an individual is a prisoner by the state having untried charges pending against the individual (MCL 780.601; MSA 4.147[1]).

3. Criminal Law — Interstate Agreement on Detainers.

A detainer for purposes of the Interstate Agreement on Detainers is a notification filed with an institution in which an individual is serving a sentence advising that the prisoner is wanted to face pending charges in the notifying state; a detainer serves to notify the custodial state to hold the prisoner or inform the notifying state prior to the prisoner's release; a detainer remains lodged against a prisoner without any action being taken on it (MCL 780.601; MSA 4.147[1]).

4. Criminal Law — Interstate Agreement on Detainers.

Compliance with the provisions of the Interstate Agreement on Detainers is required once a detainer is filed (MCL 780.601; MSA 4.147[1]).

5. Criminal Law — Interstate Agreement on Detainers.

The requirement for a speedy trial under the Interstate Agreement on Detainers is applicable whenever the receiving state initiates the disposition of charges underlying a detainer it has previously lodged against a prisoner because any other interpretation of the provision providing for a speedy trial would allow a government to gain the advantages of lodging a detainer against a prisoner without assuming the responsibilities that the agreement intended to arise from such an action (MCL 780.601; MSA 4.147[1]).

6. Criminal Law — Interstate Agreement on Detainers.

The presumption that public officials perform the duties imposed on them by law in a valid and regular manner should not apply to officials of a sending custodial state under the Interstate Agreement on Detainers (MCL 780.601; MSA 4.147[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gerald L. White,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for the people.

*Currie, Kendall, Keith, Larkin, Pommerville & Merrill, P.C.* (by *Thomas L. Ludington*), for defendant on appeal.

Before: R. B. Burns, P.J., and D. F. Walsh and P. J. Marutiak,* JJ.

D. F. Walsh, J. Defendant Murray James Bentley was convicted of perjury. MCL 750.422; MSA 28.664. He was sentenced to a prison term of 3 to 15 years with credit for 682 days already served. On appeal, defendant claims that he was deprived of his rights under the Interstate Agreement on Detainers (IAD). MCL 780.601; MSA 4.147(1). We agree and reverse defendant's conviction.

The perjury charge arose out of defendant's testimony at a June 24, 1977, show-cause hearing on the petition of his wife for child support. Fol-

* Circuit judge, sitting on the Court of Appeals by assignment.

lowing a preliminary examination, defendant was bound over to circuit court as charged. When defendant failed to appear in the circuit court on November 2, 1978, a bench warrant was issued for his arrest.

On September 19, 1979, defendant was arrested in Maui, Hawaii, and was charged with ten counts of credit card fraud. On September 21, 1979, he pleaded guilty to five of the counts. The remaining counts were dismissed. He was sentenced to 5 years probation, with 12 months to be served in the Maui Community Correctional Center.

By phone and written correspondence, the Midland County prosecutor's office was informed of defendant's guilty plea in Hawaii. In a January 18, 1980, letter, a Midland County assistant prosecuting attorney, who had been informed of the sentence imposed on defendant in Hawaii, told the administrator of the Maui Correctional Center that he wished "to place a hold" on defendant. The prosecutor asked the administrator to contact the Midland County prosecutor's office at least one month prior to defendant's release from the Maui facility and expressed his desire "to timely initiate proceedings for the return of Mr. Bentley to Midland for trial". Among the documents enclosed in the prosecutor's letter were the information charging defendant with perjury and the bench warrant issued for his arrest.

Defendant's sentence for the conviction in Hawaii was to expire on September 19, 1980. According to defendant, he was awakened early on the morning of September 15, 1980, and was released. Two bondsmen were waiting for him as he left the facility. They showed defendant the bond he had signed in 1978. Despite defendant's resistance, bondsmen took him by plane to Midland.

Defendant moved to quash the perjury information based on noncompliance with the IAD, which both Michigan and Hawaii have adopted. MCL 780.601; MSA 4.147(1); Hawaii Rev Stat 834-1 *et seq.* The circuit court ruled that there was a presumption that the authorities had complied with the agreement and denied defendant's motion. On reconsideration, the motion was again denied.

The findings upon which the IAD is based, and the purposes of the agreement, are set forth in Article I:

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of co-operative procedures. It is the further purpose of this agreement to provide such co-operative procedures.

See also *United States v Mauro,* 436 US 340; 98 S Ct 1834; 56 L Ed 2d 329 (1978); *People v Beamon,* 83 Mich App 121; 268 NW2d 310 (1978), *lv den* 403 Mich 850 (1978); *People v Browning (On Rehearing),* 108 Mich App 281; 310 NW2d 365 (1981).

The provisions of the IAD are triggered only when a detainer is filed with the state where an

individual is a prisoner by the state having un-
tried charges pending against the individual.
*United States v Mauro, supra; People v Paulus,*
115 Mich App 183; 320 NW2d 337 (1982).

While the agreement contains no definition of
the word "detainer", it is generally recognized that
a detainer is a notification filed with the institu-
tion in which an individual is serving a sentence,
advising that the prisoner is wanted to face pend-
ing charges in the notifying state. A detainer
serves to notify the custodial state to hold the
prisoner or inform the notifying state prior to the
prisoner's release. A detainer remains lodged
against a prisoner without any action being taken
on it. *People v McLemore,* 411 Mich 691, 692, fn 2;
311 NW2d 720 (1981); *People v Paulus, supra;
People v Monasterski,* 105 Mich App 645, 652; 307
NW2d 394 (1981), *lv den* 411 Mich 1017 (1981);
*People v Beamon, supra,* p 132; *People v Browning
(On Rehearing), supra,* p 290.

The January, 1980, letter from the Midland
County prosecutor's office to the Maui facility was
clearly a detainer for purposes of the IAD. See,
*e.g., People v Browning (On Rehearing), supra.* As
noted *supra,* once a detainer is filed the IAD is
triggered and compliance with the provisions of
the agreement is required. *United States v Mauro,
supra; People v Browning (On Rehearing), supra.*

The fact that defendant was ultimately brought
to Midland County by bond procedures instead of
by a request for temporary custody under Article
IV(a) of the IAD did not render inapplicable the
provisions of the IAD. In *United States v Mauro,
supra,* the United States Supreme Court stated
that the speedy trial requirement of Article IV of
the agreement applied whenever the receiving
state initiated the disposition of charges underly-

ing a detainer it had previously lodged against a
prisoner: "Any other reading of this section would
allow the Government to gain the advantages of
lodging a detainer against a prisoner without as-
suming the responsibilities that the Agreement
intended to arise from such an action." 436 US
364; 98 S Ct 1849; 56 L Ed 2d 349. See also *People
v Browning (on Rehearing), supra,* (footnote omit-
ted).

The same reasoning applies to Article III and
the instant fact situation. By lodging a detainer
against defendant, the Midland County authorities
gained the advantage of the informal detainer
practice, in contrast, for example, to the disadvan-
tages of the more cumbersome extradition proce-
dures. The record does not refute the clear impli-
cation that, because of the filing of the detainer,
the Midland County authorities were informed of
when defendant would be released from the Maui
facility and acted to assure defendant's immediate
return to Michigan upon his release.

Once a detainer is filed against a prisoner cer-
tain rights and obligations arise. Article III(c) of
the agreement provides:

"The warden, commissioner of corrections or other
official having custody of the prisoner shall promptly
inform him of the source and contents of any detainer
lodged against him and shall also inform him of his
right to make a request for final disposition of the
indictment, information or complaint on which the
detainer is based."

Article III(a) provides that a prisoner against
whom a detainer has been filed shall be brought to
trial within 180 days of requesting final disposi-
tion.

The trial court in this case ruled that there was

a presumption that the Hawaiian officials informed defendant of the filing of the detainer and of his right to request final disposition of the Michigan charges.

Nothing in the IAD supports invocation of a presumption of official compliance with the dictates of the agreement. We are persuaded by the reasoning of the Colorado appellate court which rejected the claim that a prisoner bears the burden of proving that he was not advised of a detainer lodged against him or of his right to request final disposition of the pending charges.

"In none of the cases we have examined treating the provisions of the Interstate Agreement on Detainers has any court applied the presumption that officials of party states to the Agreement have performed their required duties thereunder in a valid and regular manner. While there are sound policy reasons for applying the presumption within the borders of each sovereign state, its application to the duties imposed by Article III(c) 'would allow the Government to gain the advantages of lodging a detainer against a prisoner without assuming the responsibilities that the Agreement intended to arise from such an action.' *United States v Mauro, supra.*

"We hold that the presumption that public officials perform the duties imposed on them by law in a valid and regular manner does not apply to officials of a sending state under the Agreement on Detainers." *People v Lincoln,* 42 Colo App 512, 516; 601 P2d 641 (1979). *Lincoln* was cited with approval in *People v Browning (On Rehearing), supra,* p 300.

In this case the prosecution was given ample opportunity to show that the Hawaiian officials had informed defendant of his rights under the IAD. The record is devoid of any evidence that such compliance occurred.

To summarize our discussion thus far, we hold

that there was a detainer filed against defendant in Hawaii by the Midland County prosecutor and that the prosecutor did not sustain his burden of establishing the Hawaiian officials' compliance with the provisions of the IAD. The agreement, however, does not set forth a sanction for a custodial state's failure to notify a prisoner of the filing of a detainer and of his right to request final disposition of the pending charges.[1]

Among the several states which have entered into the IAD, there is a split of authority as to the appropriate sanction to be imposed when the officials of a custodial state do not comply with the mandate of Article III(c). In *State v Clark,* 222 Kan 65; 563 P2d 1028 (1977), the Kansas Supreme Court ruled that in the event of such noncompliance the defendant was limited to the raising of a constitutional challenge to the prosecutor's actions on speedy trial grounds. A contrary view places the burden of the custodial state's noncompliance on the prosecutor of the receiving state and holds that dismissal of the charges is the appropriate sanction:

> "The duty to inform the prisoner under Article III(c) is a necessary concomitant to the effective operation of the Agreement. *People v Daily,* 46 Ill App 3d 195; 360 NW2d 1131 (1977). The purpose of the Agreement requires that the adverse consequences of official oversights be visited upon the prosecution, not upon the prisoner. Only in this way can the goals of the Agreement be achieved by requiring the officials concerned to learn of their duties under the Agreement, and to perform them conscientiously. *People v Esposito, supra.* [37 Misc 2d 386; 201 NYS2d 83 (1960).]

---

[1] The agreement provides that dismissal of the indictment, information or complaint is the appropriate sanction for other forms of noncompliance with its provisions. Article III(d), Article IV(e), Article V(c).

"The receiving state, having set the provisions of the Agreement in motion, must bear the burden of assuring that its provisions are enforced in the sending state. If the serious consequence of dismissal results automatically from the failure of the correctional officials in the imprisoning state to comply, 'pressure [will] soon be brought to bear on the negligent officials from their administrative superiors as a result of protests from the other state.' *Note, Convict's Right to a Speedy Trial,* 18 Rutgers L Rev 828, 862 (1964)." *People v Lincoln, supra,* p 516.

Under the facts of the instant case, we are persuaded that the burden of the Hawaiian officials' failure to inform defendant of the filing of the detainer and of his right to request final disposition of the perjury information should fall on the Midland County prosecutor. The prosecutor in this case made not the slightest effort to assure that defendant was informed of the detainer or of his right to request final disposition. After the filing of the detainer, the prosecutor took no action whatsoever under the IAD and simply allowed defendant to remain in the Hawaiian facility for eight months until his release and apprehension by bondsmen. The implication that the Midland authorities were kept well informed of defendant's status in Hawaii is unmistakable. Defendant's trial did not take place until eight months after his return to Michigan. We do not decide if we would reach the same result if a prosecutor established that a defendant suffered no prejudice as a result of a violation of Article III(c) of the IAD.[2] But we note that in this case the record does not indicate

[2] In *People v Meyers,* 109 Mich App 719; 311 NW2d 454 (1981), *vacated* 412 Mich 916 (1982), this Court noted that the IAD contains no requirement that a defendant show that prejudice resulted from a violation of the provisions of the agreement. At issue in *Meyers* was application of Article IV(c) of the agreement.

what effect, if any, the filing of the detainer had on defendant's prisoner-status in Hawaii.

We emphasize that we do not intend by this opinion to set forth a rule of general applicability. We do not hold that the prosecutor of the receiving state must always bear the burden of the custodial state's noncompliance with Article III(c). Nor do we hold that dismissal is always the proper remedy for IAD violations. Our holding is limited to the particular facts of this case. Under those facts, the burden of noncompliance with Article III(c) of the IAD should fall on the Midland County prosecutor.

Defendant's perjury conviction is reversed.