PEOPLE v OFFICE

Docket No. 62931. Submitted September 14, 1982, at Lansing.—Decided June 21, 1983. Leave to appeal denied, 418 Mich 883.

Defendant, Willie F. Office, III, escaped from a halfway house in Pontiac, Michigan, in mid-July, 1977, where he was serving time for an uttering and publishing conviction. In February, 1978, defendant was arrested in Wisconsin and subsequently convicted of sexual assault. He was sentenced to up to five years imprisonment. In October, 1978, the Michigan Department of Corrections sent a letter and an administrative warrant to the Wisconsin State Prison informing the Wisconsin authorities that defendant was wanted in Michigan for the escape and additionally requesting that Michigan authorities be kept advised as to defendant's status. The Wisconsin authorities acknowledged receipt of the letter and administrative warrant and stated that they would notify Michigan authorities at least 30 days prior to defendant's scheduled release date. In addition, the Wisconsin authorities notified defendant by a printed form entitled "Notification of Detainer and Acknowledgment of Speedy Trial" that a detainer had been filed against him. The portion of said form permitting defendant to request a speedy trial was crossed out. In April, 1981, Michigan authorities issued a formal complaint and warrant against defendant charging him with breaking prison. Following an unsuccessful attempt to fight extradition, defendant was returned to Michigan on July 7, 1981, and subsequently pled guilty in the Oakland Circuit Court, Robert L. Templin, J. Defendant appeals alleging that the failure to supply him with a means for

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 6, 7] 21 Am Jur 2d, Criminal Law § 406.
    Validity, construction, and application of Interstate Agreement on Detainers. 98 ALR3d 160.
[2, 3] 21 Am Jur 2d, Criminal Law § 404.
[3] Availability of postconviction relief under 28 USCS § 2255 based on alleged governmental violation of the Interstate Agreement on Detainers Act (18 USCS Appx). 58 ALR Fed 443.
[5, 7] 21 Am Jur 2d, Criminal Law § 407.

requesting a speedy trial violated Article III of the Interstate Agreement on Detainers (IAD). *Held:*

1. A detainer for purposes of the Interstate Agreement on Detainers is a notification filed with the institution where a prisoner is serving a sentence advising him that he is wanted to face pending criminal charges in the notifying state. A detainer, however, need not be a formal document. Therefore, the letter, together with the administrative warrant sent to the Wisconsin authorities in late October, 1978, constituted a detainer.

2. Defendant was unequivocally denied the opportunity to request a final disposition of the prison break charge since the portion of the form allowing such was crossed out.

3. It is the state's responsibility to bring formal charges upon the filing of a detainer and defendant should not be penalized for the state's failure to do so.

4. The failure to inform defendant of his right to request final disposition of the prison break charge and the failure to formally charge the defendant when said detainer was issued violated defendant's rights under Art III of the IAD.

5. The burden of such official noncompliance with Art III of the IAD must fall on the prosecution.

6. The appropriate remedy is dismissal of the prison break complaint against defendant.

7. Defendant did not waive his right to assert such violations under the IAD by pleading guilty.

Reversed.

DANHOF, C.J., dissented and noted that the IAD provision allegedly violated does not contain the sanction of automatic dismissal for violation thereof. Therefore, since dismissal is not automatic, he does not believe that this issue constitutes a jurisdictional defense and he feels that the defendant waived this issue by his plea of guilty. He would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS.

The Interstate Agreement on Detainers prescribes a procedure by which a prisoner may demand prompt disposition of charges against him in a state other than the one in which he is imprisoned; such agreement requires that a prisoner be brought to trial within 180 days after he has filed a written request for final disposition of his case; the agreement's provisions are triggered, however, only after a detainer is filed with

the custodial state by the state having untried pending charges (MCL 780.601, Art III; MSA 4.147[1], Art III).

2. PRISONS AND PRISONERS — DETAINERS.

A detainer for purposes of the Interstate Agreement on Detainers is a notification filed with the institution where a prisoner is serving a sentence advising him that he is wanted to face pending criminal charges in the notifying state; a detainer need not be a formal document.

3. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS.

The Interstate Agreement on Detainers provides that the warden, commissioner of corrections or other official having custody of a prisoner shall promptly inform the defendant of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based; the failure to inform a defendant of his right to request final disposition of the charge upon which the detainer is based and the failure to formally charge the defendant when a detainer is issued violates the defendant's rights under the Interstate Agreement on Detainers (MCL 780.601, Art III; MSA 4.147[1], Art III).

4. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS.

A defendant need not show prejudice resulting from a violation of Article III of the Interstate Agreement on Detainers in order to assert such a violation as a defense in an action (MCL 780.601, Art III; MSA 4.147[1], Art III).

5. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — WAIVER — GUILTY PLEAS.

A defendant does not waive his right to assert violations of the Interstate Agreement on Detainers by pleading guilty to a charge in the notifying state following his return to that state.

DISSENT BY DANHOF, C.J.

6. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS.

*The nature of a violation of the Interstate Agreement on Detainers and the particular circumstances involved in the case determine whether dismissal of the charges in the notifing state is required where the provision allegedly violated does not contain the sanction of automatic dismissal for a violation thereof (MCL 780.601; MSA 4.147[1]).*

7. Criminal Law — Defenses — Interstate Agreement on Detain-
ers — Guilty Pleas.

An alleged violation of a provision of the Interstate Agreement
on Detainers does not constitute a jurisdictional defense to
charges in the notifying state where the provision allegedly
violated does not contain the sanction of automatic dismissal
for a violation thereof; a defendant may waive issues regarding
the alleged violation of such a provision by pleading guilty in
the notifying state (MCL 780.601; MSA 4.147[1]).

Frank J. Kelley, Attorney General, Louis J.
Caruso, Solicitor General, L. Brooks Patterson,
Prosecuting Attorney, Robert C. Williams, Chief
Appellate Counsel, and Margaret G. Horenstein,
Assistant Prosecuting Attorney, for the people.

Gettleson & Sobel (by Michael A. Sobel), for
defendant on appeal.

Before: Danhof, C.J., and M. F. Cavanagh and
D. E. Holbrook, Jr., JJ.

D. E. Holbrook, Jr., J. On October 28, 1981,
defendant pled guilty to the crime of breaking
prison, contrary to MCL 750.193; MSA 28.390.
Thereafter sentenced to a prison term of one to
five years, defendant appeals as of right.

Defendant escaped from a halfway house in
Pontiac, Michigan, in mid-July, 1977, where he
was serving time for an uttering and publishing
conviction. In February, 1978, defendant was ar-
rested in Wisconsin and subsequently convicted of
sexual assault. He was sentenced to up to five
years in prison.

In late October, 1978, the Michigan Department
of Corrections sent a letter and an administrative
warrant to the Wisconsin State Prison. Said letter
informed the Wisconsin authorities that defendant

was wanted in Michigan for escape from the Pontiac home and additionally requested that said authorities "please keep us advised" as to defendant's status. In early December, 1978, the Wisconsin authorities acknowledged the receipt of the letter and administrative warrant and stated defendant's tentative release date was November 14, 1985, unless released at an earlier date on parole. Said authorities stated they would notify the Michigan authorities at least 30 days prior to defendant's scheduled release date. Additionally, said authorities notified defendant by a printed form entitled "Notification of Detainer and Acknowledgment of Speedy Trial" that a "Detainer" had been filed against him. The portion of said form permitting defendant to request a speedy trial was crossed out.

No formal action was taken by the Michigan authorities until April, 1981, when a formal complaint and warrant were issued against defendant charging him with breaking prison. Defendant unsuccessfully fought extradition arguing that the delay in filing a formal complaint violated his right to a speedy trial. Defendant was returned to Michigan on July 7, 1981, and subsequently pled guilty.

Defendant first claims that the failure to supply him with a means for requesting a speedy trial violated Art III of the Interstate Agreement on Detainers (IAD), MCL 780.601; MSA 4.147(1). We agree.

"The purpose of the IAD is to counteract the uncertainties which obstruct programs of prisoner treatment and rehabilitation when a prisoner's status is clouded by the existence of untried charges on which detainers have been lodged." *People v Browning (On Rehearing),* 108 Mich App 281, 290; 310 NW2d 365 (1981).

Art III prescribes a procedure by which a prisoner may demand prompt disposition of charges against him in a state other than the one in which he is imprisoned. Art III(a) requires that a prisoner be brought to trial within 180 days after he has filed a written request for final disposition of his case. The 180 days does not start to run until said request is made, *Edmond v Dep't of Corrections,* 78 Mich App 196; 259 NW2d 423 (1977).

The IAD provisions are triggered, however, only after a "detainer" is filed with the custodial state by the state having untried pending charges. *People v Paulus,* 115 Mich App 183; 320 NW2d 337 (1982). We must, therefore, first determine if a detainer was filed against defendant before we can examine the merits of defendant's claim.

The IAD contains no definition of the word "detainer". However, this Court has recognized that a detainer is a notification filed with the institution where a prisoner is serving a sentence advising him that he is wanted to face pending criminal charges in the notifying state. *Paulus, supra,* p 186. A detainer need not be a formal document. *People v Beamon,* 83 Mich App 121; 268 NW2d 310 (1978). Accordingly, we hold the letter, together with the administrative warrant sent to the Wisconsin authorities in late October, 1978, constituted a "detainer" herein. See *People v Bentley,* 121 Mich App 36; 328 NW2d 389 (1982); *Paulus, supra; People v Browning, supra,* p 292; *People v Monasterski,* 105 Mich App 645; 307 NW2d 394 (1981); *People v Beamon, supra.*

Once a detainer is filed against a prisoner, certain obligations arise, one of which is found in Art III(c):

"The warden, commissioner of corrections or other

official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." MCL 780.601; MSA 4.147(1).

In other words, the mechanism by which a defendant makes his request for final disposition depends on the good faith of those sending and receiving the detainer. In the case at bar, defendant was informed by the Wisconsin authorities that a "detainer" had been lodged against him. He was, however, unequivocally denied the opportunity to request final disposition of the prison break charge since the portion on the form allowing same was crossed out. Moreover, it is the state's responsibility to bring *formal* charges upon the filing of a detainer and defendant should not be penalized for the state's failure to do so.

When a detainer is lodged against a defendant and he learns of informal charges pending against him, as in the instant case, we believe the purpose and spirit of the IAD is violated if defendant is prevented from asserting his rights under the act simply because he has not been *formally* charged. After filing the detainer herein with knowledge of defendant's whereabouts, neither the Department of Corrections nor the prosecutor took any formal action on the outstanding charge. This is the type of practice the IAD was designed to prevent. Moreover, it is unmistakable the Michigan authorities were kept well informed of defendant's Wisconsin release date since immediately prior to said date a formal complaint and warrant were filed against him on the prison break charge. We hold that failure to inform defendant of his right to request final disposition of said charge and the failure to

formally charge defendant when said detainer was issued violated defendant's rights under Art III.

Additionally, we hold that the burden of such official noncompliance with Art III must fall on the prosecution.[1] See *Bentley, supra.* We further hold that the appropriate remedy herein is dismissal of the prison break complaint against defendant. *Bentley, supra, Edmond, supra,* and Articles III(d), IV(e), and V(c) of the IAD, MCL 780.601; MSA 4.147(1).

Finally, defendant's guilty plea did not waive his right to assert said violations under the IAD. See *People v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976).

The foregoing being dispositive, we need not discuss defendant's remaining allegations of error.

Reversed.

M. F. CAVANAGH, J., concurred.

DANHOF, C.J. *(dissenting).* The IAD provision which is alleged to have been violated in this case, unlike the provision involved in *People v Meyers,* 109 Mich App 719; 311 NW2d 454 (1981), *vacated on other grounds* 412 Mich 916 (1982), does not contain the sanction of automatic dismissal for violation thereof. Whether dismissal is required for a violation of this IAD provision depends on the nature of the violation and the particular circumstances involved in the case. See *People v Bentley,* 121 Mich App 36, 45-46; 328 NW2d 389, 393-394 (1982). Since dismissal is not automatic, I do not believe that this issue constitutes a jurisdic-

---

[1] In *People v Meyers,* 109 Mich App 719; 311 NW2d 454 (1981), *vacated on other grounds* 412 Mich 916 (1982), this Court noted that the IAD contains no requirement that a defendant show prejudice resulted from a violation of its provisions. At issue in *Meyers* was the application of Art IV(c), however we believe the same reasoning to apply with respect to Art III.

tional defense. Therefore, I am of the opinion that defendant waived this issue by his plea of guilty. *People v Alvin Johnson,* 396 Mich 424, 444; 240 NW2d 729 (1976).

I would affirm defendant's conviction.