STATE ex rel. David S. TRYON, Relator,

v.

Donald L. MASON, Judge of the Circuit Court of Jackson County, Missouri, Division II, Respondent.

No. 65703.

Supreme Court of Missouri, En Banc.

Oct. 9, 1984.

Rehearing Denied Nov. 20, 1984.

Sean D. O'Brien, James W. Fletcher, Kansas City, for relator.

Robert Frager, Albert A. Riederer, Kansas City, for respondent.

1. Article III(1) of the Agreement contains a 180-day speedy trial provision. In essence, the Agreement requires a state that has lodged a detainer against a prisoner serving a term of imprisonment in another state to bring him to trial within 180 days from the time the prisoner requests a final disposition of all untried charges pending against him in the state demanding his return.

2. Article V(3) requires a dismissal of all untried charges with prejudice when Article III's 180-day speedy trial provision has been violated.

BILLINGS, Judge.

## ORIGINAL PROCEEDING IN PROHIBITION

Relator David S. Tyron seeks to prohibit respondent, the Honorable Donald L. Mason, Judge of the Circuit Court of Jackson County, from trying him for second degree burglary and obtaining by fraud a schedule II controlled substance. Relator alleges that under the Interstate Agreement on Detainers, §§ 217.490–217.520, RSMo Supp. 1983 [hereinafter, the Agreement], Missouri authorities were required to bring him to trial on these two criminal felony charges within 180 days after he requested a final disposition of all untried charges pending against him in Missouri.[1] Because he was not brought to trial within 180 days from the time he requested final disposition of these charges, relator contends respondent is without jurisdiction to place him on trial and that the charges against him must therefore be dismissed with prejudice.[2]

On April 16, 1984, this Court issued its preliminary order directing respondent to take no further action in this cause. We now quash the preliminary order.

The record reveals the following chronology of events. While relator was free on bond in Missouri pending further action on the two criminal felony charges, he was arrested in Missouri on a Kansas warrant for violating the terms of his Kansas probation.[3] Thereafter, on November 4, 1982, relator voluntarily waived extradition to Kansas and was sentenced by a Kansas trial court on December 7, 1982, to a term of imprisonment of one to five years in the Kansas State Reformatory. Under Kan. Stat.Ann. § 21–4603(3) (1981),[4] the sentenc-

3. The record does not reveal the offense for which he was placed on probation in Kansas.

4. Kan.Stat.Ann. § 21–4603(3) (1981) provides in relevant part:

Any time within 120 days after a sentence is imposed or within 120 days after probation has been revoked, the court may modify such sentence or revocation of probation . . . .

We note that in *State ex rel. Owens v. Hodge*, 230 Kan. 804, 641 P.2d 399, 405 (1982), the Kansas Supreme Court held this statute reflected the clear intent of the Kansas Legislature to make the sentencing of an individual a seri-

ing court retained jurisdiction over the relator for 120 days—during which time the court could exercise its call-back power to modify the sentence originally imposed.

After relator began serving his Kansas sentence, he received notice on December 20, 1982, that a detainer had been lodged against him by Missouri authorities for his return to Jackson County for disposition of the second degree burglary charge. Seven days later relator had written notice served upon the Assistant Prosecuting Attorney of Jackson County.[5] This notice informed Missouri authorities of relator's place of incarceration and of his desire for a final disposition of any untried charges pending against him in Missouri. Accompanying this notice was Kansas' offer to deliver temporary custody of the relator to Missouri authorities.

On January 10, 1983, the Assistant Prosecuting Attorney of Jackson County notified Kansas authorities that he planned to take custody of the relator on or about February 8, 1983. This plan was never carried out because on January 14, 1983, Kansas authorities informed Missouri that they could not release the relator as long as he remained subject to the call-back power and jurisdiction of the Kansas trial court. The 120-day call-back period was due to expire on April 1, 1983.

The Kansas authorities on May 5, 1983, forwarded to the appropriate Missouri authorities another offer to deliver temporary custody of relator. Relator was returned to Missouri on July 7, 1983, and was scheduled to stand trial the second week of September, 1983.[6] On September 19, 1983, relator filed a motion to dismiss the two felony charges pending against him in the Circuit Court of Jackson County. The respondent overruled the motion and relator then unsuccessfully sought a writ of prohi-

bition in the Missouri Court of Appeals, Western District. This proceeding followed.

Both parties agree that relator's request on December 27, 1982, was sufficient to trigger the running of the 180-day speedy trial period. Absent the tolling of the 180-day period, relator had to be brought to trial on or before June 27, 1983. Article VI of the Agreement states that "... the running of the time periods shall be tolled whenever and for as long as the prisoner is *unable to stand trial* ...." (our emphasis).

The dispositive issue in this case is whether relator was unable to stand trial in Missouri during the 120 days he remained subject to the jurisdiction and call-back power of the Kansas trial court. Relator is correct in asserting that this Court has the jurisdiction and authority to determine whether he was unable to stand trial; however, he would severely limit our ability to exercise this authority. He contends that the tolling provision of Article VI comes into effect only when the prisoner's inability to stand trial results from some bar to his physical presence at trial—such as the prisoner's lack of mental competence or his being subject to the compulsory process of another jurisdiction.

■ We have been unable to find any authority which limits the circumstances under which a prisoner will be deemed unable to stand trial to the narrow and exclusive list of circumstances offered by the relator. *See State v. Ivey*, 410 So.2d 636 (Fla.App.1982); *State v. Wood*, 241 N.W.2d 8, 13 (Iowa 1976); *People v. Bentley*, 121 Mich.App. 36, 328 N.W.2d 389, 394 (1982). To advance the argument that the refusal of Kansas prison authorities to release him was not a bar to his physical presence at

---

ous matter which a court should not take lightly or determine without a full knowledge of the facts. *State ex rel. Owens v. Hodge, supra,* 641 P.2d at 405.

5. The relator's notice complied with the requirements of Article III(1). *See State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53, 56 (Mo.App. 1980).

6. The record made available to us does not reveal the exact day on which the relator was scheduled to be tried. However, in light of our holding in this case, the precise day on which he was to be tried is not critical to the resolution of the question presented. The critical fact is that the relator was scheduled to be brought to trial before September 27, 1983.

trial, relator necessarily must ignore the plain facts of this case. *See Commonwealth v. Eisenhauer*, 232 Pa.Super. 336, 331 A.2d 786, 787 (1974).

We hold that for the duration of the 120-day call-back period, throughout which time Kansas authorities expressly refused to release relator to the temporary custody of the Assistant Prosecuting Attorney of Jackson County, he was unable to stand trial in Missouri. The 180-day speedy trial provision was tolled and did not begin to run until April 1, 1983. Consequently, Missouri authorities had until September 27, 1983, to bring him to trial.[7]

Our preliminary order in prohibition is quashed.

RENDLEN, C.J., and HIGGINS, GUNN and BLACKMAR, JJ., concur.

WELLIVER, J., dissents.

DONNELLY, J., dissents in separate opinion filed.

DONNELLY, Judge, dissenting.

The purpose of the Agreement on Detainers, § 217.490 et seq., which was adopted by the legislature at the same session as the 1971 amendment to the Uniform Mandatory Disposition of Detainers Law, § 217.450 et seq., *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 354–55 (Mo. banc 1982), is to provide cooperative procedures to encourage the expeditious and orderly disposition of untried charges, thereby avoiding the uncertainties which obstruct programs of prisoner treatment and rehabilitation. Article I. Article IX provides that the Agreement be liberally construed. Missouri courts have interpreted the Agreement and the companion Uniform Mandatory Disposition on Detainers Law, strictly against the state. *State ex rel. Kemp v. Hodge, supra; State ex rel. Saxton v. Moore*, 598 S.W.2d 586 (Mo.App. 1980); *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53 (Mo.App.1980).

As noted in *People v. Bentley*, 121 Mich. App. 36, 328 N.W.2d 389 (1982), cited by the principal opinion, there is a split of authority as to the appropriate sanction to be imposed when the officials of a custodial state do not comply with the mandate of Article III(c). At one end of the spectrum, no sanction is held to be imposed and the legislative enactment providing for a speedy trial is construed as directory. *State v. Clark*, 222 Kan. 65, 563 P.2d 1028, 1032 (1977). At the other end, the receiving state has been held to have the burden of establishing compliance with the Agreement's provisions by the sending state, and upon failing to meet that burden must dismiss the charges. *People v. Lincoln*, 42 Colo.App. 512, 601 P.2d 641, 644 (1979).

In my view, to permit the 180 day period to be tolled in this case undermines the purpose of the Agreement. The 180 day provision of Article III(1) of the Agreement contains the proviso that "for good cause shown in open court, the prisoner *or his counsel* being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (Emphasis added.) In this case, the state requested no continuance, although it had been notified of the Kansas refusal to deliver relator in ample time to do so. Having failed to avail itself of the saving provisions of the statute, the adverse consequences of the Kansas refusal should be visited upon the state and not upon relator.

I respectfully dissent.

---

7. Both parties concede that the time which has elapsed since the relator filed his motion to dismiss is not to be counted in determining the expiration of the 180-day period. *See State v. Carpenter*, 24 Wash.App. 41, 599 P.2d 1, 4 (1979).