PEOPLE v HARRIS

Docket No. 82426. Submitted November 5, 1985, at Detroit.—Decided
January 22, 1986.

Defendant, Michael Harris, also known as Gregory Rochester,
was charged with first-degree murder on March 26, 1976. A
detainer was filed on the defendant on February 22, 1979, while
he was incarcerated in the State of Maryland. Defendant was
removed to Michigan on July 2, 1980. He was arraigned in
Detroit Recorder's Court on July 8, 1980, and preliminary
examination was held July 17, 1980. Defendant was brought to
trial on March 13, 1981, at which time he entered his plea of
guilty to two counts of second-degree murder. The trial court,
John P. O'Brien, J., sentenced defendant to life imprisonment.
Defendant appealed and the Court of Appeals affirmed his
conviction in a memorandum opinion decided November 18,
1983. Subsequently, the defendant moved in the trial court for
relief from judgment, alleging a violation of the Interstate
Agreement on Detainers Act (IAD), MCL 780.601 *et seq.* Wayne
County Circuit Judge Roland L. Olzark, sitting temporarily in
the Detroit Recorder's Court, denied the motion. Defendant
appeals by leave granted. *Held:*

1. The failure of defense counsel to raise the claim of a
meritorious IAD violation may constitute the ineffective assis-
tance of counsel, and, if so, both the guilty plea and the waiver
of rights afforded by the IAD would be invalid.

2. The trial court's determination, that the delays beyond the

REFERENCES

Am Jur 2d, Criminal Law §§ 404-407, 849 *et seq.*

Effect on operation of Speedy Trial Act (18 USCS §§ 3161 et seq.) of
indictment returned by grand jury whose term has expired. 64
ALR Fed 916.

Availability of postconviction relief under 28 USCS § 2254 based on
alleged governmental violation of Interstate Agreement on De-
tainers Act (18 USCS Appx). 63 ALR Fed 155.

Availability of postconviction relief under 28 USCS § 2255 based on
alleged governmental violation of the Interstate Agreement on
Detainers Act (18 USCS Appx). 58 ALR Fed 443.

Validity, construction, and application of Interstate Agreement on
Detainers. 98 ALR3d 160.

120-day period provided for in the IAD were attributable to the defendant and, thus, no violation of the IAD occurred, is unsupported by specific findings of fact. If this determination is supported by the record, the effectiveness of defendant's representation would not be in question. Therefore, the case is remanded to the trial court for that court to make specific findings of fact in this regard and transmit those findings to the Court of Appeals within 90 days of receipt of this opinion.

3. The trial court, in calculating the actual delay attributable to the prosecution, should not include adjournments requested by the defendant or other delays caused by the defendant, even if not established by the transcripts of open-court proceedings.

Remanded for clarification. Jurisdiction is retained by the Court of Appeals.

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS ACT — JUDICIAL CONSTRUCTION.

The Interstate Agreement on Detainers Act is a congressionally sanctioned interstate compact, construction of which presents a federal question (MCL 780.601 *et seq.;* MSA 4.147[1] *et seq.*).

2. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL — INTERSTATE AGREEMENT ON DETAINERS ACT.

Defense counsel's complete failure to raise a valid substantive defense may amount to the ineffective assistance of counsel; the failure of defense counsel to raise the meritorious claim of an Interstate Agreement on Detainers Act violation may constitute the ineffective assistance of counsel rendering invalid both the defendant's guilty plea and the waiver of rights afforded by the act (MCL 780.601 *et seq.;* MSA 4.147[1] *et seq.*).

3. CRIMINAL LAW — SPEEDY TRIAL — INTERSTATE AGREEMENT ON DETAINERS ACT.

The phrase "good cause shown in open court" contained in Article IV(c) of the Interstate Agreement on Detainers Act which provides that "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court" is intended to apply only to adjournments and other delays caused by the prosecution; a trial court should not include adjournments requested by the defendant or other delays caused by the defendant in calculating the actual delay attributable to the prosecution (MCL 780.601 *et seq.;* MSA 4.147[1] *et seq.*).

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Robert H. Roether, P.C.* (by *Robert H. Roether),* for defendant.

Before: SHEPHERD, P.J., and J. H. GILLIS and P. J. CLULO,* JJ.

PER CURIAM. Defendant was convicted upon his plea of guilty to two counts of second-degree murder, MCL 750.317; MSA 28.549. His conviction was affirmed by this Court in a memorandum opinion decided November 18, 1983. Subsequently, defendant moved in the trial court for relief from judgment, alleging a violation of the Interstate Agreement on Detainers Act (IAD), MCL 780.601 *et seq.;* MSA 4.147(1) *et seq.* The motion was denied, and defendant filed an application for leave to appeal, which was granted by this Court on February 21, 1985.

Defendant was originally charged with first-degree murder on March 26, 1976. A detainer was filed on the defendant on February 22, 1979, while he was incarcerated in the State of Maryland. Defendant was removed to Michigan on July 2, 1980.

Defendant was arraigned in Detroit Recorder's Court on July 8, 1980, and preliminary examination was held July 17, 1980. However, defendant was not brought to trial until March 13, 1981, at which time he entered his plea of guilty.

Defendant now argues that the 254-day delay between his arrival in Michigan on July 2, 1980, and his plea of guilty on March 13, 1981, violated

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Article IV(c) of the Interstate Agreement on Detainers Act, which requires that trial be commenced within 120 days of the prisoner's arrival in the state. Prior to considering the merits of this argument, we must first consider the effect of defendant's guilty plea on his ability to raise this issue.

This issue has been addressed on several occasions by the federal courts, including the Sixth Circuit Court of Appeals, and has been resolved in favor of the prosecutor's position. For example, in *Kowalak v United States*, 645 F2d 534 (CA 6, 1981), the court noted that a guilty plea is generally regarded as a waiver of all nonjurisdictional errors, and that violations of the IAD have been held to constitute nonjurisdictional errors. The court continued:

"As we stated in *[United States v Eaddy*, 595 F2d 341 (CA 6, 1979)], and reaffirmed in *[Mars v United States*, 615 F2d 704 (CA 6, 1980)], 'to allow a person to assert violations of the Agreement [IAD] beyond the trial stage, without a showing of cause * * * would * * * undercut the policy of achieving prompt and final judgments.' 595 F2d at 346; 615 F2d at 707. Obviously, to permit the raising of IAD questions after a plea of guilty, entry of judgment, and sentencing involves the same concerns. We therefore conclude that entry of a plea of guilty is just as surely a waiver of the right to raise IAD violations as was the commencement of trial in *Eaddy* and in *Mars*. Both pleading guilty and standing trial are the sort of 'affirmative request to be treated in a manner contrary to the procedures prescribed by Article IV(c) or (e)' that may constitute a voluntary waiver of IAD rights. 595 F2d at 344." 645 F2d 537.

We have some difficulty with the position of the federal courts on this issue since the Michigan Supreme Court, in discussing the effect of a guilty

plea on the ability to raise issues on appeal, stated as follows:

"Thus, it is clear that the United States Supreme Court, while recognizing that certain rights of defendant may be waived by a subsequent plea of guilty, does not say that is true of all rights. Certainly it is true that those rights which might provide a complete defense to a criminal prosecution, those which undercut the state's interest in punishing the defendant, or the state's authority or ability to proceed with the trial may never be waived by guilty plea. These rights are similar to the jurisdictional defenses in that their effect is that there should have been no trial at all. The test, although grounded in the constitution, is therefore a practical one. Thus, the defense of double jeopardy, those grounded in the due process clause, those relating to insufficient evidence to bind over at preliminary examination and failure to suppress illegally-obtained evidence without which the people could not proceed are other examples. Wherever it is found that the result of the right asserted would be to prevent the trial from taking place, we follow the lead of the United States Supreme Court and hold a guilty plea does not waive that right." *People v Alvin Johnson,* 396 Mich 424, 443-444; 240 NW2d 729 (1976). (Footnotes omitted.)

We believe that a violation of Article IV(c) can be characterized as a complete defense to a criminal prosecution, and is thus not waived by a guilty plea. The sanction for failing to bring a defendant to trial within the period provided in Article IV(c), *i.e.,* 120 days, is contained in Article V(c), where it states that "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect". To our minds, even if not a jurisdictional defect, this clear and explicit language can only be

described as providing a complete defense to a criminal prosecution.

This conclusion is supported by a recent decision of this Court, *People v Office,* 126 Mich App 597; 337 NW2d 592 (1983), where the majority held that the defendant was not prevented by his guilty plea from complaining of the failure of the appropriate authorities to inform him of his right to request final disposition of the charge and of their failure to formally charge him after the detainer was issued. 126 Mich App 603-604. Moreover, we believe that even the dissenting judge in *Office* would agree that the violation presented in the instant case was not waived by the guilty plea. Chief Judge DANHOF objected to the majority's holding in *Office* only because the IAD violation with which they were concerned did not provide for automatic dismissal for a violation thereof. 126 Mich App 604 (DANHOF, C.J., *dissenting).* However, as noted above, Article V(c) provides that the santion for violating the time constraints of Article IV(c) is in fact automatic dismissal. Thus, it would appear that even Judge DANHOF would find that the alleged IAD violation involved in the case before us was not waived by the guilty plea entered by defendant.

However, we are hesitant to reject the holding of *Kowalak v United States, supra, i.e.,* that a plea of guilty waives a defendant's rights under the IAD, in favor of our own analysis of the waiver issue based upon *People v Alvin Johnson, supra,* and *People v Office, supra.* Our hesitation stems from the observation contained in *People v McLemore,* 411 Mich 691, 693-694; 311 NW2d 720 (1981), that "[t]he Interstate Agreement on Detainers is a congressionally sanctioned interstate compact, construction of which presents a federal question", citing *Cuyler v Adams,* 449 US 433; 101 S Ct 703;

66 L Ed 2d 641 (1981). Thus, it would seem that we are constrained to follow the holding of *Kowalak v United States, supra,* as to the effect of a guilty plea on the ability to raise IAD violations on appeal.

However, our resolution of this question is, in the end, unimportant since the *Kowalak* court also held that the failure of defense counsel to raise the issue of a meritorious IAD violation may constitute the ineffective assistance of counsel, and, if so, both the guilty plea and the waiver of rights afforded by the IAD would be invalid. *Kowalak, supra,* pp 537-538. We agree with this observation since Michigan courts have long held that the complete failure to raise a valid substantive defense may amount to ineffective assistance of counsel. See, *e.g., People v Moore,* 131 Mich App 416, 418; 345 NW2d 710 (1984).

After several hearings were held to consider the merits of defendant's claim, the trial court held in favor of the prosecution, finding that defendant had waived his right to assert any violation of the IAD by pleading guilty. However, the trial court also found that the delays beyond the 120-day period were attributable to the defendant and, thus, no violation of Article IV(c) occurred. If this determination is supported by the record, then the effectiveness of defendant's representation would not be in question. Unfortunately, in ruling on this issue, the trial court offered only a conclusory statement unsupported by specific findings of fact. This failure to provide detailed findings has substantially hindered our attempt to review the lower court's conclusion in this regard and, thus, we find it necessary to remand this case to the trial court in order to obtain a more thorough record.

In doing so, we find it necessary to address an argument advanced by the defendant in his appellate brief. In listing the delays which he believed should be attributable to the prosecution, defendant included several adjournments which were either requested or in some other way caused by the defendant. Defendant supported the inclusion of these delays on the ground that no transcript existed which would establish "good cause shown in open court", citing Article IV(c) of the IAD. We reject this argument since we believe that this phrase was intended to apply only to adjournments and other delays caused by the prosecution. As noted in *People v Harlan,* 129 Mich App 769, 771; 344 NW2d 300 (1983), the 120-day period may also be tolled or otherwise exceeded "for as long as the defendant is unable to stand trial" and "for any period of delay caused by the defendant's request or in order to accommodate the defendant". Therefore, in calculating the actual delay attributable to the prosecution in this case, the trial court should not include adjournments requested by the defendant or other delays caused by the defendant, even if not established by the transcripts of open-court proceedings.

We decline to address the defendant's remaining arguments since they were adjudicated in his previous appeal as of right.

Remanded for clarification. The trial court is requested to make specific findings of fact and transmit those findings to this Court within 90 days from the date of receipt of this opinion. We retain jurisdiction.