## PEOPLE v WOODRUFF

Docket Nos. 67105, 67106. Decided September 13, 1982. On application by the people for leave to appeal the Supreme Court, in lieu of granting leave to appeal, affirmed the judgment of the Court of Appeals.

Willie Woodruff, who had escaped from a half-way house of the Department of Corrections where he was imprisoned under the name Larry Johnson, was charged in the Recorder's Court of Detroit with three violations of the Controlled Substances Act by an information filed on August 23, 1978, and was charged with possession of heroin and possession of a firearm during the commission of a felony by an information filed on August 18, 1978. The two cases were consolidated for a trial to begin on December 5, 1978. However, the defendant was arrested on November 4, 1978, under the name Larry Johnson, and was returned to the State Prison of Southern Michigan at Jackson. He did not appear for trial on December 5. He was released from prison on April 13, 1979, and reappeared in the Recorder's Court on July 1, 1979. The court, George W. Crockett, III, J., granted the defendant's motion to dismiss the charges with prejudice for failure to comply with the statute which requires bringing a defendant who is a state prison inmate to trial on untried charges within 180 days after the prosecutor receives notice of the defendant's imprisonment. The Court of Appeals, V. J. Brennan, P.J., and Bashara, J. (Bronson, J., dissenting), rejected the prosecutor's argument that the 180-day rule does not apply to offenses committed during incarceration or escape, for which mandatory consecutive sentences are provided; however, it remanded the cases to the trial court to determine whether the prosecutor should have known that the defendant was in prison (Docket Nos. 48420, 48421). The people apply for leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held:*

The statute which provides that a prosecution against an inmate of a state penal institution on an untried charge must be commenced within 180 days after a prosecutor receives notice of incarceration applies to any untried charge against any inmate which carries a punishment of imprisonment in a

state penal institution, even if the offense was committed by the inmate while in prison or if it carries a mandatory consecutive sentence. Because the objective of the act would not be furthered by retroactive application of the decision, it will apply only to existing and future untried warrants, indictments, informations,. or complaints and to cases pending on direct review where the issue is preserved.

The act is unambiguous. Charges are either to be tried within a specified time or dismissed. The language expressly states that the act applies to "any" untried charge against "any" prisoner, "whenever" the department of corrections shall receive notice of that charge. The nature of the punishment which might be imposed, concurrent or consecutive, does not determine the reach of the provision.

Affirmed.

105 Mich App 155; 306 NW2d 432 (1981) affirmed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Robert E. Berg, Jr.,* for defendant.

Per Curiam. The question before us is whether 1957 PA 177[1] applies to any untried charge which carries a possible punishment of imprisonment against any inmate regardless of whether the offense is committed after imprisonment or whether the offense carries a mandatory consecutive sentence.

I

On August 23, 1978, following a preliminary examination, the prosecutor filed an information in Recorder's Court, Case No. 78-04944, charging defendant with possession of 6.8 grams of heroin,

[1] MCL 780.131 *et seq.;* MSA 28.969(1) *et seq.*

possession of five tablets of diazepam (Valium), and possession of five tablets of codeine. The arrest warrant had been issued on July 31, 1978.

On August 18, 1978, after a preliminary examination in Recorder's Court, Case No. 78-05176, an information had been filed charging the defendant with possession of 5.7 grams of heroin and possession of a firearm during the commission of a felony. The warrant in that case had been issued on August 9, 1978.

Trial of both cases was set for December 5, 1978. When the defendant failed to appear, a bench warrant was issued in both cases. In fact, the defendant had been returned, as an escapee, to Jackson prison on or about November 4, 1978. He was released on April 13, 1979. On July 13, 1979, defendant's counsel filed a motion to dismiss both cases, alleging violation of MCL 780.131; MSA 28.969(1), which provides that "such inmate shall be brought to trial within 180 days" after the prosecutor receives notice. The trial court conducted a hearing on the motion on July 17, 1979; the prosecutor responded only that he did not have actual notice of the incarceration. The trial court dismissed the case with prejudice on July 25, 1979.

The prosecutor appealed, and the Court of Appeals concluded that the 180-day rule was applicable even though the crimes with which the defendant was charged were allegedly committed while he was a prison escapee and any sentences to be imposed upon conviction of those offenses would be consecutive to the term being served. MCL 768.7a; MSA 28.1030(1). It ordered a remand to the trial court for a determination whether the prosecutor should have known that the defendant

was incarcerated. 105 Mich App 155; 306 NW2d 432 (1981).

The prosecutor has applied for leave to appeal.

II

The act in question provides:

"Sec. 1. Whenever the department of corrections shall receive notice that there is pending in this state any untried warrant, indictment, information or complaint setting forth against any inmate of a penal institution of this state a criminal offense for which a prison sentence might be imposed upon conviction, such inmate shall be brought to trial within 180 days after the department of corrections shall cause to be delivered to the prosecuting attorney of the county in which such warrant, indictment, information or complaint is pending written notice of the place of imprisonment of such inmate, and request for final disposition of such warrant, indictment, information or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner. The written notice and statement provided herein shall be delivered by certified mail." MCL 780.131; MSA 28.969(1).

"Sec. 2. The department of corrections shall notify each prisoner of any request forwarded under the provisions of section 1 of this act." MCL 780.132; MSA 28.969(2).

"Sec. 3. In the event that, within the time limitation set forth in section 1 of this act, action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order

dismissing the same with prejudice." MCL 780.133; MSA 28.969(3).

The prosecutor argues that the 180-day rule applies only where the pending charge would allow for concurrent sentencing. This is the position first taken by a panel of the Court of Appeals in *People v Loney,* 12 Mich App 288, 292-293; 162 NW2d 832 (1968):

"The purpose of the statute is clear. It was intended to give the inmate, who had pending offenses not yet tried, an opportunity to have the sentences run concurrently consistent with the principle of law disfavoring accumulations of sentences. This purpose, however, does not apply in the instance of a *new* offense committed *after* imprisonment, nor where the statute as in the case of an escape or attempted escape, sets up a mandatory consecutive sentence. The Legislature was not concerning itself with the need for dispatch in the handling of a charge brought against an inmate for offenses committed *while* in prison.

\* \* \*

"For the foregoing reasons, it is the opinion of this Court that the 180-day statute does not and was not intended to apply to offenses committed while in prison and for which mandatory consecutive sentences are provided."

In *People v Moore,* 96 Mich App 754, 761-762; 293 NW2d 700 (1980), a panel of the Court of Appeals disagreed with the *Loney* interpretation:

"We find no ambiguity in the 180-day rule statute that would permit us to make exceptions in the application of its plain language. Even if it were reasonable and otherwise valid to distinguish, as *Loney* did, between inmates who commit criminal offenses prior to

incarceration and those who commit them subsequently, the distinction is one that the Legislature, not this Court, should make. However, our decision here rests not only on the concept of separation of powers, but also upon our belief that the rationale underlying *Loney* is no longer completely valid.

"The *Loney* Court justified its result on what it believed was the intent of the Legislature in passing this statute. *Loney* found this intent to be that inmates of state penal institutions should serve concurrent, rather than consecutive, sentences. Because inmates who commit criminal offenses while incarcerated are not entitled to concurrent sentencing, see MCL 768.7a; MSA 28.1030(1), an incarcerated defendant was not prejudiced by delay of trial. However, since *Loney* was decided the Michigan Supreme Court has recognized that the 180-day rule protects more than just a defendant's right to serve concurrent sentences.

"In *People v Hill,* 402 Mich 272, 280; 262 NW2d 641 (1978), the Supreme Court found that the purpose of the 180-day rule was to 'secure to state prison inmates their constitutional right to a speedy trial'. As set forth in the United States Constitution, US Const, Am VI, and the Michigan Constitution, Const 1963, art 1, § 20, the right of an accused to a speedy trial does not depend upon whether the charged offense was committed prior to or during incarceration for another crime. Therefore, we hold that *Loney* was wrongly decided and that persons such as defendant who commit crimes while incarcerated are entitled to the protection of the 180-day rule."

Since *Moore,* several panels of the Court of Appeals have split on the issue.[2]

## III

We find the extent of the act's coverage to be

[2] Compare *People v Moore,* 111 Mich App 633; 314 NW2d 718 (1981), and *People v Grandberry,* 102 Mich App 769; 302 NW2d 573 (1980), with *People v Hegwood,* 109 Mich App 438; 311 NW2d 383 (1981), *People v Marcellis,* 105 Mich App 662; 307 NW2d 402 (1981), *People v Pitsaroff,* 102 Mich App 226; 301 NW2d 858 (1980), *People v Anglin,* 102 Mich App 118; 301 NW2d 470 (1980), and *People v Ewing,* 101 Mich App 51; 301 NW2d 8 (1980).

unambiguously plain, and it is to be applied as written.[3] The title, which is an expression of the law's object,[4] declares it too to be "An act to dispose of untried warrants, indictments, informations or complaints against inmates of penal institutions of this state".[5] The corpus of the act sets forth the methods of disposition. Charges are either to be tried within a specified time or dismissed. The language of the statute expressly provides that it applies to "any" untried charge against "any" prisoner, "whenever" the department of corrections shall receive notice of that charge. MCL 780.131; MSA 28.969(1).

The statute imposes three basic conditions for the 180-day rule to affect an untried charge: (1) the charge must be against a prison inmate, (2) the offense must be one for which a prison sentence might be imposed upon conviction, and (3) notice must be received by the department and a request delivered to the appropriate prosecuting attorney. The statute does not specify that the *type* of sentence, concurrent, mandatory consecutive, or discretionary consecutive, determines the reach of the provision. The statute refers only to "a prison sentence".

The statute may have several salutary effects, no one of which should be mistaken for the sole purpose of the act. This Court indicated in *People*

[3] *Lansing v Lansing Twp,* 356 Mich 641, 649-650; 97 NW2d 804 (1959).

[4] Const 1963, art 4, § 24.

[5] The title does not declare that it is an act to prevent law enforcement officials from using dilatory tactics with respect to untried charges against inmates in order to assure that a concurrent sentence is not effectively rendered a consecutive one. Nor does the title provide that it is an act to secure a state prisoner his speedy trial rights.

*v Collins,* 388 Mich 680, 689; 202 NW2d 769 (1972), in *People v Castelli,* 370 Mich 147, 153; 121 NW2d 438 (1963), and most recently in *People v Hill,* 402 Mich 272, 280-282; 262 NW2d 641 (1978), that one purpose of the statute was to assure the defendant's right to a speedy trial while an inmate. It may be more appropriate to perceive the act as having the *effect* of fostering the right to a speedy trial, while recognizing that the *object* of the act is to dispose of untried charges against prison inmates.[6]

Other salutary effects may include: protecting concurrent sentences, minimizing obstructions to prison rehabilitation, aiding in preventing untried charges from affecting early release, and clearing court dockets and prosecutors' offices of stale charges.[7]

We hold that the statute applies to any untried charge which carries a punishment of imprisonment in a state penal institution against any inmate, even if the offense was committed while in prison or carries a mandatory consecutive sentence. Since we are convinced that the objective of the act would not be furthered by applying this decision to cases where final disposition has occurred and where the issue does not involve guilt

---

[6] Although the decision in *Castelli* suggests otherwise, not every compliance with the 180-day rule embodied in the act will automatically satisfy the constitutional requirement of speedy trial. The constitutional protection exists independent of any statutory protection. What is evident is that the effect of the statute helps enable the defendant to present his or her defense. One might imagine the difficulty that a defendant would have in trying to locate witnesses who were inmates at the time the untried offense was committed if too long a time elapsed between the commission and the trial.

[7] The cost of bringing a stale, untried charge to trial, including transportation, security and the actual prosecution of the inmate, may well, at some point, outweigh the benefits to society in proceeding to trial.

or innocence, this decision shall only apply to existing and future untried warrants, indictments, informations or complaints[8] and to cases pending on direct review where the issue is preserved.

Pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we affirm the judgment of the Court of Appeals.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

---

[8] Despite this Court's current view of the nearly 25-year-old statute, the fact remains that uncertainty existed as to its scope. The prosecutor apparently relied in good faith on the contrary statutory construction by the Court of Appeals in 1968. Indeed, other panels of the Court of Appeals followed or quoted with approval the decision in *People v Loney, supra.* See *People v Parker,* 21 Mich App 399; 175 NW2d 879 (1970); *People v Theodore Williams,* 66 Mich App 521; 239 NW2d 653 (1976). Further, even after a panel of the Court of Appeals rejected the *Loney* construction in *People v Moore, supra,* other panels continue to follow the *Loney* construction. See fn 2, *supra.*