PEOPLE v SHUE

Docket No. 80055. Submitted June 10, 1985, at Grand Rapids.—De-
cided August 19, 1985. Leave to appeal applied for.

Timothy Shue was convicted of armed robbery and felony-fire-
arm, Wexford Circuit Court, William R. Peterson, J. Defendant
appealed, alleging several errors. *Held:*

1. Defendant was arrested and convicted in Missouri on
charges arising there, was then transferred to the Muskegon
Correctional Facility to serve a sentence for violation of parole,
and was thereafter transferred to Wexford County for prelimi-
nary examination and trial on the charges involved in this
appeal. Upon defendant's arrest in Missouri, the Michigan
authorities entered the fact that a Michigan arrest warrant
was outstanding into the LEIN system and requested the
Missouri authorities by telephone to place a hold on defendant.
Defendant alleges that the present charges should not have

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Criminal Law §§ 404 *et seq.*
  Validity, construction, and application of Interstate Agreement on
    Detainers. 98 ALR3d 160.
[3] Am Jur 2d, Criminal Law §§ 857, 858.
[3] Am Jur 2d, Penal and Correctional Institutions § 49.
  See the annotations in the ALR3rd/4th Quick Index under Prisons
    and Convicts.
[4] Am Jur 2d, Criminal Law §§ 658, 662.
  See the annotations in the ALR3rd/4th Quick Index under Speedy
    Trial.
[5] Am Jur 2d, Criminal Law § 867.
[6] Am Jur 2d, Criminal Law §§ 802, 803.
  See the annotations in the ALR3rd/4th Quick Index under Lineups
    and Showups.
[7] Am Jur 2d, Indictments and Informations §§ 55, 56.
  Power of court to make or permit amendment of indictment with
    respect to allegations as to name, status, or description of persons
    or organizations. 14 ALR3rd 1358.
  See the annotations in the ALR3rd/4th Quick Index under Wit-
    nesses.
[8] Am Jur 2d, Criminal Law §§ 547 *et seq.*
  Right to credit for time spent in custody prior to trial or sentence.
    77 ALR3rd 182.

been brought because of a violation of the Interstate Agreement on Detainers. However, the defendant was initially returned to Michigan on the parole violation charge, to which the IAD does not apply. Furthermore, no detainer was ever lodged against the defendant, a requirement for application of the IAD. The telephone call and entry of the warrant into the LEIN system do not constitute a detainer. Thus, there was no violation of the IAD.

2. It is not possible to determine from the record whether there was a violation of the 180-day rule. The case is remanded for a hearing to determine when the prosecutor had notice of defendant's custody and to determine whether the prosecutor made a good-faith effort to bring defendant to trial promptly.

3. Defendant, under the facts of this case, was not denied his right to a speedy trial.

4. Defendant was not entitled to the presence of counsel at a photographic lineup which was conducted when defendant was in Missouri and was thus not in custody in Michigan, not readily available, and was not yet the focal point of the investigation.

5. The prosecutor failed to indorse two persons who clearly were res gestae witnesses. The case must be remanded for a hearing to determine whether the prosecutor was diligent, whether the testimony of the witnesses would have been cumulative, and whether the defendant was prejudiced by the failure to indorse and produce the witnesses.

6. Defendant failed to preserve for review his claim that the prosecutor injected error into the trial by his closing argument.

7. Defendant's sentence was not improper nor based on inaccuracies in the presentence report.

Affirmed, but remanded for a further evidentiary hearing.

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — DETAINERS.

A detainer, for purposes of the Interstate Agreement on Detainers, is a notification filed with the institution in which an individual is serving a sentence, advising that the prisoner is wanted to face pending charges in the notifying state; such a notice must be in writing (MCL 780.601; MSA 4.147[1]).

2. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — PAROLE VIOLATIONS.

The Interstate Agreement on Detainers is not applicable to detainers for parole violations (MCL 780.601; MSA 4.147[1]).

3. CRIMINAL LAW — PRISONS AND PRISONERS — 180-DAY RULE.

There are three basic conditions which must be met in order for

the 180-day rule, which requires untried charges against prison inmates to be acted upon within 180 days, to affect an untried charge: (1) the charge must be against a prison inmate; (2) the offense must be one for which a prison sentence might be imposed upon conviction; and (3) notice must be received of the outstanding charges and a request to act on the charges must be delivered to the appropriate prosecuting attorney (MCL 780.131; MSA 28.969[1]).

4. CRIMINAL LAW — SPEEDY TRIAL — PROCEEDINGS IN FOREIGN STATE.
   A delay in bringing a defendant to trial which is attributable to proceedings disposing of criminal charges in another state should not be considered to be the responsibility of the Michigan prosecutor in considering a claim of denial of speedy trial.

5. CRIMINAL LAW — SPEEDY TRIAL.
   It cannot be presumed that a defendant has waived his right to a speedy trial by failing to demand a speedy trial, but the failure to make a demand may be considered in determining whether the defendant was denied a speedy trial.

6. CRIMINAL LAW — PHOTOGRAPHIC LINEUP — PRESENCE OF COUNSEL.
   A defendant was not entitled to the presence of counsel at a photographic lineup which was conducted when the defendant was not in the custody of Michigan authorities, was not readily available for a corporeal lineup, and, while a suspect, was not yet the clear focal point of the investigation.

7. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — INDORSEMENT OF WITNESSES.
   The prosecution is required to indorse all res gestae witnesses to a crime; the failure to indorse res gestae witnesses is not excused by the defendant's failure to move for the indorsement of the witnesses.

8. CRIMINAL LAW — SENTENCING — CREDIT FOR TIME SERVED.
   A defendant is not entitled to sentence credit for time spent in jail on unrelated charges.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David A. Hogg,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Peter Jon Van Hoek),* for defendant on appeal.

Before: GRIBBS, P.J., and CYNAR and P. J. DUG-
GAN,* JJ.

CYNAR, J. Defendant was convicted of armed
robbery, MCL 750.529; MSA 28.797, and felony-
firearm, MCL 750.227b; MSA 28.424(2), after a
jury trial in Wexford County Circuit Court in
March, 1984. He was sentenced to from 30 to 50
years for armed robbery and two years for felony-
firearm. Defendant appeals from his convictions
and sentences to this Court as of right.

Debra Richardson was working as a sales clerk
in a Payless Shoe Store in Cadillac, Michigan, on
February 1, 1982. She testified that defendant
entered the store late that afternoon, ostensibly to
purchase shoes. Defendant locked his arm around
her neck and placed what Richardson took to be a
weapon behind her left shoulder. He forced her
into the back room and demanded she show him
the safe. Defendant made her sit in the back room
and used tape to fasten her wrists behind her
back. When two customers entered the store, he
released her and instructed her to wait on the
customers. Richardson assisted the women and
they left.

Defendant then made Richardson put the money
from the register and safe into a paper bag along
with a pair of shoes. Defendant left Richardson in
the store's bathroom after securing her hands and
ankles with tape.

Defendant's girlfriend, Pam Stefan, was waiting
outside of the store in an automobile. Stefan testi-
fied that he came back to the automobile with a
gun stuck in his pants, a new pair of shoes, and a
shoe box filled with money. Stefan said defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

told her to drive away carefully. Defendant later related other details of the robbery to Stefan.

On March 11, 1982, Detective Eugene Ambs of the Michigan State Police received information that defendant may have been involved in the robbery and was now in Missouri. The information came from defendant's probation officer, Robert La Pisto. A photographic lineup was held for Richardson's benefit on March 12, 1982. Richardson identified defendant.

Ambs was soon informed that defendant was under arrest in Bridgeton, Missouri, for armed robbery. Ambs obtained an arrest warrant and informed the Bridgeton Police Department of that fact. The warrant was entered into the Law Enforcement Information Network (LEIN) and Ambs requested that the Bridgeton Police Department place a "hold" on defendant. They informed Ambs that a hold had already been placed on defendant by the Michigan Department of Corrections for violation of parole.

Defendant was convicted of larceny from a person in Missouri. He was sentenced to one year in the county jail. On December 15, 1982, he was transferred from the Missouri jail to the Muskegon Correctional Facility to serve time for violation of his parole. On June 2, 1983, defendant was brought to the Wexford County jail. The preliminary examination began June 14, 1983. It was continued on July 7, 1983, after an adjournment requested by the defendant so that a corporeal lineup could be held. Defendant was bound over for trial.

After numerous pretrial motions by defendant, the trial was scheduled for January 24, 1984, but was postponed until March 13, 1984, at defendant's request. Defendant was found guilty on March 14, 1984. He made a motion for a new trial

which was denied in an opinion issued by the trial court on May 23, 1984. Defendant was subsequently sentenced on June 18, 1984.

Defendant's first claim is that the charges should not have been brought against him because the Interstate Agreement on Detainers (IAD), MCL 780.601; MSA 4.147(1), was violated. In order for the IAD to apply a detainer must be lodged against a defendant. *People v McLemore,* 95 Mich App 536; 291 NW2d 109 (1980). Article III of the IAD provides that:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged against the prisoner,* he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final dispostion to be made of the indictment, information or complaint * * *

* * *

"(c) The warden, commissioner or corrections or other official having custody of the prisoner shall promptly inform him *of the source and contents of any detainer lodged against him* and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." (Emphasis added.)

There is no exact definition of the term detainer. It has been held that an index card marked with the notation "detainer" and sent to the prison authorities of another jurisdiction is a detainer for the purposes of the act. *People v Paulus,* 115 Mich App 183; 320 NW2d 337 (1982). A letter from the

court clerk to prison authorities may be considered a detainer for purposes of the IAD. *People v Beamon,* 83 Mich App 121; 268 NW2d 310 (1978), *lv den* 403 Mich 850 (1978); *People v Browning (On Rehearing),* 108 Mich App 281; 310 NW2d 365 (1981). A letter accompanied by an administrative warrant has also been considered a detainer. *People v Office,* 126 Mich App 597,. 602; 337 NW2d 592 (1983), *lv den* 418 Mich 883 (1983). However, a writ of habeas corpus ad prosequendum, filed with state authorities directing the production of a prisoner for trial on federal criminal charges, is not a detainer for the purposes of the IAD. *United States v Mauro,* 436 US 340; 98 S Ct 1834; 56 L Ed 2d 329 (1978). The generally recognized definition of a detainer is a notification filed with the institution in which an individual is serving a sentence, advising that the prisoner is wanted to face pending charges in the notifying state. *People v Bentley,* 121 Mich App 36, 41; 328 NW2d 389 (1982), *lv den* 417 Mich 877 (1983). Senate Report 91-1356, 91st Cong, 2d Sess, 3 US Code Cong & Admin News, p 4865 (1970).

Applying the *Bentley, supra,* definition it is clear that no detainer was filed. The notification was not made in writing, therefore the definitions of a detainer in *Beamon, supra, Browning, supra,* and *Office, supra,* do not apply. Furthermore, while a "hold" was placed on the LEIN there is no indication that this was acknowledged by the sender in Michigan or the recipient in Missouri as a detainer. These less formal communications are insufficient to activate the IAD. This case is unlike *Beamon, Bentley* and *Office* where the authorities clearly invoked the act, albeit informally. In this case the authorities in Michigan had not invoked the act. Furthermore, when defendant was finally returned to Michigan it was not under the aus-

pices of the IAD, but for violation of parole for leaving the state. The IAD is not applicalbe to parole violation detainers. *Buchanan v Dep't of Corrections,* 50 Mich App 1; 212 NW2d 745 (1973). We hold that a telephone call and entry of a notation in the LEIN system is not a detainer within the scope of the IAD. Because the authorities did not file a detainer, the IAD does not apply to defendant. *People v Barnes,* 93 Mich App 509; 287 NW2d 282 (1979); *Beamon, supra.*

Defendant's next claim is that the trial court lost jurisdiction over him because he was not brought to trial within 180 days of his incarceration in Michigan as required by MCL 780.131; MSA 28.969(1). The 180-day rule only applies to inmates in state penal institutions in Michigan. The statute imposes three basic conditions for the 180-day rule to affect an untried charge: (1) the charge must be against a prison inmate; (2) the offense must be one for which a prison sentence might be imposed upon conviction; and (3) notice must be received of the outstanding charges and a request to act on the charges must be delivered to the appropriate prosecuting attorney. *People v Woodruff,* 414 Mich 130, 136; 323 NW2d 923 (1982). It is clear from the record that the first two conditions apply to this situation. Defendant was a prison inmate and the charges carried potential prison terms. However, the record before us does not show if the Department of Corrections was aware of the outstanding warrants or when the prosecutor was informed that defendant was within the custody of the Department of Corrections. It is thus impossible for us to determine when the 180-day period began to run. It could have started on December 15, 1982, upon defendant's return to Michigan, if the Department of Corrections had received notice of the outstanding

warrants. It could also have started at a later date depending on when the prosecutor had notice that defendant was in the custody of the Department of Corrections. We cannot decide the issue on the record before us. We are therefore remanding the case to the trial court for a hearing to determine when the Department of Corrections had notice of outstanding charges and when the prosecutor had notice that defendant was in the custody of the Department of Corrections. The trial court must then determine if the prosecutor made a good faith effort to bring the case promptly to trial. *People v Woodruff,* 106 Mich App 155; 306 NW2d 432 (1981), *aff'd* 414 Mich 130; 323 NW2d 923 (1982).

Defendant's next claim is that he was denied constitutional and statutory rights to a speedy trial.[1] There was a delay of 15 months between the time that officials in Wexford County became aware of defendant's arrest in Missouri on March 12, 1982, and his arraignment in Wexford County on June 3, 1983; his preliminary examination was begun on June 14, 1983, and continued on July 7, 1983, after defense counsel requested an adjournment. Defendant filed a number of pretrial motions on various dates after the preliminary examination which further delayed the trial. The trial was finally held on March 13 and 14, 1984.[2] The

[1] US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MSA 28.1024.

[2] The following motions and attendant proceedings occurred after the conclusion of the preliminary examination on July 7, 1983:

July 18, 1983; defense motion for psychiatric examination.

July 25, 1983; order authorizing psychiatric examination.

August 1, 1983; psychiatric examination.

September 21, 1983; defense motion to hire a private investigator.

September 21, 1983; order granting motion to hire a private investigator.

September 28, 1983; defense motions for: speedy trial, return of personal property, dismissal of the felony-firearm charge, suppression of identification testimony, discovery, additional psychiatric examination, and use of a law library by defendant.

question presented is whether the prosecution was obligated to attempt to extradite defendant from Missouri, and, if so obligated, at what point was the prosecution required to begin extradition proceedings consistent with defendant's right to a speedy trial. The period between arrest on March 12, 1982, and sentencing in Missouri in July, 1982, cannot be charged to the prosecution. This delay was not an attempt to hamper his defense in Michigan. Disposition of the criminal charges in another state should not be considered to be the responsibility of the Wexford County prosecutor. *Hoag v New Jersey,* 356 US 464, 472 fn 6; 78 S Ct 829; 2 L Ed 2d 913 (1958); *People v Bradley,* 54 Mich App 89, 96-97; 220 NW2d 305 (1974).

---

October 11, 1983; amendment to September 28, 1983, motion.

October 19, 1983; motion hearing rescheduled from October 24, 1983, to October 31, 1983, by order of the court.

October 31, 1983; hearing and disposition of some defense motions.

November 21, 1983; prosecution memorandum in apparent response to supplemental brief mailed to court on November 11, 1983, and entered in file January 5, 1984.

January 3, 1984; opinion disposing of various defense motions.

January 5, 1984; supplemental brief dated November 11, 1983, filed with brief dated October 31, 1983.

January 9, 1984; defense motion to reschedule trial and change venue.

February 2, 1984; motion for rehearing brought by defense counsel.

February 10, 1984; notice of hearing.

February 10, 1984; prosecution motion to add witnesses; notice of hearing February 13, 1984.

February 15, 1984; supplemental brief filed by defense counsel regarding speedy trial issues.

February 15, 1984; opinion on reconsideration filed.

March 5, 1984; amended information motion to add witnesses and notice of hearing filed by the prosecution.

March 13 and 14, 1984; order granting immunity to Pamela Stefan, jury trial.

It is clear from this list of activities that the case steadily was proceeding toward trial after the preliminary examination was concluded. The prosecution need only make prompt good faith efforts to bring the case to trial. *People v Freeman,* 122 Mich App 260; 332 NW2d 460 (1982), *lv den* 417 Mich 1052 (1983). It is clear the prosecutor was doing so. Furthermore the numerous delays attributable to defense motions are not chargeable to the prosecution. *People v Pelkey,* 129 Mich App 325; 342 NW2d 312 (1983).

The record indicates that the prosecution knew or should have known that the defendant had been sentenced in Missouri by September, 1982. Nonetheless no attempt was made to secure his presence in Michigan. As noted above, no detainer was filed and there was no attempt to extradite him. In *Smith v Hooey,* 393 US 374; 89 S Ct 575; 21 L Ed 2d 607 (1969), the United States Supreme Court ruled that a state has an obligation to make a good faith effort to bring a defendant to trial once the defendant demands a speedy trial. No demand was made by the defendant. While it cannot be presumed that defendant waived his right to a speedy trial by not making a demand, his failure to make such a demand may be considered. Defendant testified that he made such a demand verbally in Missouri after he was sentenced in July, 1982, although no written demand was made. This factor cannot be weighed heavily against him but it also does not weigh heavily against the prosecution in this case.

Another factor to be considered is the length of the delay. Defendant became a Michigan prison inmate on December 15, 1982, in Muskegon for parole violation. Wexford County officials learned that defendant was brought back to Michigan on January 31, 1983. Defendant was returned to Wexford County on June 2, 1983, and arraigned on June 3, 1983. Examination took place on June 14, 1983, and July 7, 1983. His trial ended on March 14, 1984. This was a delay of 21 months. On its face the amount of time would appear to be presumptively prejudicial to defendant. However, an examination of the reasons for the delay reveals otherwise.

We have already noted that the case proceeded steadily toward trial after arraignment; most of the delay was attributable to the defendant. The

delays after he was returned to Wexford County on June 2, 1983, which were attributable to the prosecution were consistent with its good faith obligation to bring defendant to trial. The prosecution's failure to attempt to extradite defendant can be attributed in part to the charges being prosecuted against the defendant in Missouri. The record also indicates that the prosecution expected defendant to be returned to the custody of the Department of Corrections. Extradition would have been more expedient, but this case does not show the egregious type of conduct on the part of the prosecution that was the case in *Moore v Arizona,* 414 US 25; 94 S Ct 188; 38 L Ed 2d 183 (1973).

The delay which is not attributable to the defendant was not in bad faith, unreasonable or part of a considered attempt to deny him a speedy trial. While this delay must be attributed to the prosecution, it does not weigh heavily as a factor in evaluating the speedy trial claim.

The final factor to be considered is the prejudice to the defendant. Defendant has not enumerated any specific difficulties he faced in marshalling his defense because of the delay. No witnesses to the crime were unavailable as a result of the delay; there is no indication that evidence was lost. Defendant would have been incarcerated in Missouri and Michigan even if he had never faced the charges because of his conviction in Missouri and parole violation in Michigan.

Furthermore, as noted in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), and *Moore v Arizona, supra,* the factors listed therein must be considered with any other circumstances which may be relevant. We note that defendant faced charges in Missouri which had to be disposed of by the Missouri courts and that defendant was

subject to the jurisdiction of the Department of Corrections for violation of parole. These are relevant circumstances which ameliorate the delay in this case. We conclude that defendant, in this factual context, was not denied his right to a speedy trial.

Defendant's next claim is that he was denied his constitutional right to the presence of counsel at the photographic lineup held for the benefit of Debra Richardson on March 12, 1982, at about 9:15 a.m. Defendant had been taken into custody by Missouri authorities at about 12 midnight. The record indicates that the Wexford County authorities did not know that defendant was in custody in Missouri when the lineup was conducted; he was certainly not in the custody of the Michigan authorities. He was also not readily available. The record before us also indicates that, while he was a suspect, he was not yet the clear focal point of the investigation which would require the presence of counsel. Defendant was not entitled to the presence of counsel at the time that the photographic lineup was conducted. *People v Harrison,* 138 Mich App 74; 359 NW2d 256 (1984).

Defendant's next claim is that error occurred when the prosecution failed to indorse the two customers who entered the store and departed during the course of the robbery. The issue is properly before this Court because it was raised as part of defendant's motion for a new trial. *People v LeFlore,* 96 Mich App 557; 293 NW2d 628 (1980), *lv den* 409 Mich 927 (1980). The defendant sought a hearing under *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973). The trial court denied the request.

It is clear that the women were res gestae witnesses because they observed part of the contin-

uum of the criminal transaction. *People v Rivera,* 114 Mich App 419; 319 NW2d 355 (1982). There has been no showing of due diligence on the part of the prosecution in producing the evidence. The evidence cannot, on the record before us, be considered cumulative; the women's descriptions of the robber conflicted with other testimony. *People v Castelli,* 370 Mich 147; 121 NW2d 438 (1963). The women were not participants in the crime. The defendant did object to the prosecutor's failure to indorse. The prosecution should have indorsed the witnesses. The defendant's failure to move to indorse the witnesses does not excuse the prosecution's failure. *People v Reynolds,* 93 Mich App 516, 522, fn 1; 286 NW2d 898 (1979). This case must be remanded for a *Robinson* hearing to determine if the prosecution was diligent, if the women's testimony would have been cumulative, and if defendant was prejudiced by the prosecution's failure to indorse and produce the two women at trial.

Defendant's next claim is that error was injected into the trial by the prosecutor's closing argument. The claim was not preserved by a timely objection and no manifest injustice has been shown; therefore, it has not been preserved for appellate review. *People v Duncan,* 402 Mich 1, 15-16; 260 NW2d 58 (1977).

Defendant's final claim is that his sentence was based on inaccuracies in the presentence report, not supported by sufficient reasons, excessive in length and that he was not given sufficient credit for time served. Our review discloses that the sentence is not excessive. *People v Coles,* 417 Mich 523, 542-543; 339 NW2d 440 (1983). The court imposed the sentence it did because of defendant's prior record, the fact that he was unlikely to reform himself, the abuse of his other opportunities for reform and because he presented a danger

to society. These were valid reasons for the sentence. *Coles, supra.*

Defendant's claim that the trial court sentenced him based on inaccurate information is also without merit. Defendant claims the trial court took into account unprosecuted crimes. However, the trial court specifically stated that it would not consider that information in sentencing. Defendant also states that the trial court referred to the fact that he threatened to shoot the clerk and possessed a gun during the robbery. There was no need to address the "inaccuracies" because the proofs at trial supported these statements in the report. Defendant's claim that the trial court believed he was convicted by a guilty plea is without merit; the trial judge presided over his jury trial and it was unnecessary to respond to this point on the record. Defendant's claim that he should have been given credit for the time he served in the Missouri jail is also without merit. The time he spent in jail in Missouri was unrelated to this charge and he cannot receive credit. *People v Manifee,* 112 Mich App 705, 710; 317 NW2d 232 (1982). He is also not entitled to credit for the time spent in the Michigan facility for his parole violation. *People v Patterson,* 392 Mich 83, 88-89; 219 NW2d 31 (1974).

The case is remanded for an evidentiary hearing on the 180-day rule claim and the res gestae witness claim. The convictions are otherwise affirmed. We do not retain jurisdiction.