## PEOPLE v PATTERSON

Docket No. 93231. Submitted December 14, 1987, at Lansing. Decided July 19, 1988. Leave to appeal applied for.

James A. Patterson, also known as Tyrone Patterson, was convicted by a jury in Oakland Circuit Court, Alice L. Gilbert, J., of felonious assault. Defendant appealed, claiming that the thirty-three-month delay from the date of arrest to the date of trial violated his right to a speedy trial, and that, with regard to his testimony claiming self-defense, the prosecution violated his right to remain silent by arguing to the jury that it must infer defendant's guilt from defendant's failure to file prior to his arrest a complaint with the police regarding the alleged assault by the victim in this case upon defendant.

The Court of Appeals *held:*

1. The 180-day rule does not apply to inmates incarcerated in county jails such as defendant, who spent thirty-five days in the county jail and was otherwise free on bond prior to trial.

2. The factors to be balanced in determining whether or not a defendant has been denied the right to a speedy trial are (1) the length of the delay, (2) the reason for the delay, (3) defendant's assertion of the right, and (4) prejudice to the defendant. Here, where it was not clear from the record whether the prosecution or defendant was responsible for most of the delay and whether defendant was prejudiced by the delay with the claimed unavailability of a key witness for the defense, an evidentiary hearing is necessary and the case is remanded for such hearing.

3. The prosecution properly impeached defendant regarding his failure prior to his arrest to tell the police a version of the incident consistent with his self-defense theory. However, the prosecution's argument that the jury must infer defendant's guilt from his prearrest silence violated defendant's right to remain silent.

4. If, on remand, it is determined that defendant's right to a

REFERENCES

Am Jur 2d, Criminal Law §§ 849 *et seq.*

Am Jur 2d, Witnesses §§ 523 *et seq.,* 539, 539.5.

Accused's right to speedy trial under Federal Constitution—Supreme Court cases. 71 L Ed 2d 983.

speedy trial was violated, the conviction shall be set aside and vacated. If it is determined that his speedy trial right was not violated, a new trial shall be ordered based on the prosecution's violation of defendant's right to remain silent.

Reversed and remanded.

SAWYER, J., agreed with the majority on the speedy trial issue but dissented on the issue whether the prosecution prejudiced defendant's right to a fair trial by questioning and arguing about defendant's silence to the police. Judge SAWYER would hold that defendant's prearrest silence cast serious doubt upon defendant's credibility and, therefore, it was proper for the prosecution to question defendant and to comment at closing argument regarding defendant's failure to report to the police.

1. CRIMINAL LAW — SPEEDY TRIAL.

The factors to be balanced in determining whether or not a defendant has been denied the right to a speedy trial are (1) the length of the delay, (2) the reason for the delay, (3) defendant's assertion of the right, and (4) prejudice to the defendant (US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MSA 28.1024).

2. CRIMINAL LAW — SPEEDY TRIAL.

Prejudice to the defendant is presumed from a delay of eighteen months in bringing a defendant to trial and the burden of proof is shifted to the prosecutor to prove that defendant has not been prejudiced.

3. CRIMINAL LAW — SPEEDY TRIAL — PREJUDICE.

A defendant may experience prejudice to his person and prejudice to his defense from the lack of a speedy trial; prejudice to his person would take the form of oppressive pretrial incarceration leading to anxiety and concern; prejudice to his defense might include key witnesses being unavailable; impairment of defense is the most serious because the inability of a defendant to adequately prepare his case skews the fairness of the entire system.

4. CRIMINAL LAW — IMPEACHMENT — EVIDENCE — PREARREST SILENCE.

A defendant charged with assault, who testifies that he acted in self-defense, may properly be impeached by reference to his failure prior to arrest to report the claimed assault by the victim to the police; however, the prosecution may not argue to the jury that it must infer the defendant's guilt from his

prearrest silence, since to do so would violate the defendant's right to remain silent.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert L. Williams,* Chief, Appellate Division, and *Graham K. Crabtree,* Assistant Prosecuting Attorney, for the people.

*Faintuck, Schwedel & Wolfram* (by *William G. Wolfram*), for defendant on appeal.

Before: Hood, P.J., and Sawyer and T. E. Jackson,* JJ.

T. E. Jackson, J. Defendant was convicted by a jury of felonious assault, MCL 750.82; MSA 28.277, on March 11, 1986. He was sentenced to three years' probation with a requirement that the first ten months be served in the county jail. Defendant appeals as of right. We reverse and remand.

The issues for review are (1) whether defendant's right to a speedy trial was violated and (2) whether the prosecutor prejudiced defendant's right to a fair trial by questioning and arguing about defendant's silence to the police. Some chronology of events is necessary for an understanding of this case.

Defendant was arrested on June 7, 1983, for events occurring on April 27, 1983. At trial, the complainant, Excell Thompson, testified that defendant shot him in the face with a pellet gun. This arose from a controversy involving a washer and dryer that belonged to Thompson but was in the possession of defendant, who testified that Thompson gave him the washer and dryer as compensation for work he did for Thompson. In an

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

effort to retrieve the washer and dryer, Thompson asked the Pontiac police to go with him to defendant's house. The police did so, but left after defendant failed to respond. Thompson then went home.

Shortly thereafter, defendant and another person appeared on foot in front of Thompson's house. Defendant carried a large stick and expressed his displeasure for having the police brought to his house. Some words were exchanged between Thompson and defendant. Defendant then left.

A short time later, defendant reappeared in his car. Thompson and his daughter, Cecelia, testified that defendant was alone in the car. Defendant testified that an individual named Robert Turner was with him each time he went to Thompson's house. Defendant testified that he returned to Thompson's house to make peace, that he had a pellet gun in the car, and that he picked it up and fired once in self-defense when Thompson came out firing a gun.

Thompson testified that he became concerned when he saw defendant reappear in his car so he placed his .32 caliber pistol in his back pocket before going onto his front porch. Defendant was parked across the street. They exchanged some unpleasant words at which time defendant fired, hitting Thompson twice. The emergency room doctor testified that x-rays of Thompson revealed two pellets in the face and temple area. Thompson testified that he fired his gun after defendant shot him. Cecelia's testimony corroborated that defendant aimed a gun and that she heard her father say that he had been shot before she saw her father fire his gun.

There was a thirty-three-month delay between defendant's arrest on June 7, 1983, and the trial on March 10, 1986. The record is not clear (and in

some instances there is no record) on the chronology of events, dates and reasons for delay after defendant's arrest on June 7, 1983. Defendant apparently spent thirty-five days in the county jail and was otherwise free on bond prior to trial.

With regard to the issues raised on appeal, defendant's arguments concerning Michigan's 180-day rule are meritless since defendant was not a state penal institution inmate while awaiting trial. MCL 780.131 *et seq.*; MSA 28.969(1) *et seq.*; *People v Woodruff*, 414 Mich 130; 323 NW2d 923 (1982); *People v Gambrell*, 157 Mich App 253, 257-258; 403 NW2d 535 (1987); *People v Wyngaard*, 151 Mich App 107, 112; 390 NW2d 694 (1986); *People v Shue*, 145 Mich App 64, 71; 377 NW2d 839 (1985), lv den 424 Mich 908 (1986). The 180-day rule does not apply to inmates incarcerated in county jails. *People v Merkerson*, 147 Mich App 207, 213; 382 NW2d 750 (1985). The six-month standard of MCL 767.38; MSA 28.978 also is inapplicable since defendant was not in prison.

Defendant had a right to a speedy trial under US Const, Am VI and Const 1963, art 1, § 20. MCL 768.1; MSA 28.1024 provides:

> The people of this state and persons charged with crime are entitled to and shall have a speedy trial and determination of all prosecutions and it is hereby made the duty of all public officers having duties to perform in any criminal case, to bring such case to a final determination without delay except as may be necessary to secure the accused a fair and impartial trial.

In *People v Hill,* 402 Mich 272, 283; 262 NW2d 641 (1978), our Supreme Court stated:

> The factors to be balanced in determining whether or not a defendant has been denied the

right to a speedy trial are: (1) length of delay, (2) reason for delay, (3) defendant's assertion of the right, and (4) prejudice to the defendant.

See also *Gambrell, supra,* p 259. Furthermore:

> The reasons for delay are examined by this Court and each period of delay is assigned to either the prosecutor or the defendant. See *People v Chism,* 390 Mich 104, 112-113; 211 NW2d 193 (1973). Where a delay is unexplained, it is charged to the prosecution. *People v Carner,* 117 Mich App 560, 577; 324 NW2d 78 (1982). [*People v Ross,* 145 Mich App 483, 491; 378 NW2d 517 (1985).]

See also *People v Davis (After Remand),* 129 Mich App 622, 625; 341 NW2d 776 (1983).

There was a thirty-three-month delay between defendant's June 7, 1983, arrest and March 10, 1986, trial. The only delays that defendant is clearly responsible for occurred on June 16, 1983, April 23, 1985, June 24, 1985, and February 20, 1986. Most of the delays are unexplained and must be attributed to the prosecutor. *Ross, supra,* p 491. The reasons for the delays may have been revealed at the March 6, 1985, and October 30, 1985, hearings on defendant's motions for dismissal for alleged violation of his right to a speedy trial. However, these motion hearings were not transcribed. Although defendant is responsible for much of the delay in this case, we conclude that the prosecutor must be held responsible for most of the thirty-three-month delay.

With regard to the third factor, defendant asserted his right to a speedy trial by filing a demand for a speedy trial on November 29, 1983, and motions to dismiss for alleged violation of his right to a speedy trial on February 25, 1985, and October 21, 1985, and at his March 10, 1986, trial.

With regard to the fourth factor, "[w]here the delay is eighteen months or greater, the burden shifts to the prosecutor to prove that defendant has not been prejudiced." *Ross, supra,* p 491. Prejudice is presumed after an eighteen-month delay. *People v Collins,* 388 Mich 680, 690; 202 NW2d 769 (1972); *People v Grimmett,* 388 Mich 590, 606; 202 NW2d 278 (1972). As indicated above, the prosecutor should be held responsible for at least eighteen months of the delay in this case. On the issue of prejudice, it has been stated:

> There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense. Prejudice to his person would take the form of oppressive pretrial incarceration leading to anxiety and concern. Prejudice to his defense might include key witnesses being unavailable. Impairment of defense is the most serious, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker* [*v Wingo*], 407 US 514, 532 [92 S Ct 2182; 33 L Ed 2d 101 (1972)]. [*Collins, supra,* p 694.]

Defendant claims that he was prejudiced by the delay because an essential witness for his defense became unavailable. Defendant testified that Robert Turner was in defendant's car at the time of the shooting and somewhere in Alabama at the time of the trial. Thompson and his daughter, Cecelia, testified that defendant was alone in his car. The record does not reveal whether Turner was unavailable for defendant's trial since there was no indication of what efforts were made to secure his presence. Defendant's story seems so unbelievable that it is unlikely that Turner would have corroborated it. However, the Thompsons' version of the shooting also seems questionable

and the jury may have been persuaded by the testimony of an arguably neutral third party. Therefore, defendant's defense was apparently prejudiced by the delay.

We are reluctant to reverse since defendant may have been responsible for far more of the delay than can be attributed to him based on the record. Further, defendant may not have been prejudiced by the delay since Turner may not have been in defendant's car at the time of the shooting, may have been available for trial and may have testified against defendant.

This case is remanded for an evidentiary hearing to determine whether defendant's right to a speedy trial was violated. *Gambrell, supra,* pp 259-260. If defendant was denied that right, then his conviction should be set aside. If defendant was not denied his right to a speedy trial, then he must be retried because the prosecutor violated his Fifth Amendment right to remain silent.

The issue that requires a new trial in this case is the prosecutor's questioning and subsequent comments in rebuttal argument concerning defendant's silence in the face of accusation. In its brief on appeal, the prosecution states: "It may be acknowledged that the prosecutor overstepped the bounds of propriety by asking if Defendant had related his claim of self-defense to the police after his arrest," but the prosecution contends that no error resulted "even though the question was improper, since the Defendant answered that he *had* told the police." We disagree.

The prosecutor asked defendant when he told the police about Thompson shooting at him. Defendant replied that he never did. The prosecutor asked if defendant told the police about being shot at when he was arrested. Defendant replied affirmatively. In response to the prosecutor's question-

ing, defendant testified that he never made a
police report or filed a complaint against Thompson.

During his rebuttal argument, the prosecutor
argued that defendant did not tell the police that
Thompson tried to kill him because defendant was
the aggressor.

Where a defendant exercises his constitutional
right to remain silent at the time of arrest, he
cannot be impeached at trial with evidence of that
silence where he said nothing on direct examination about what was said or not said at the time of
arrest. *People v Bobo,* 390 Mich 355, 357; 212
NW2d 190 (1973).

In *People v Collier,* 426 Mich 23; 393 NW2d 346
(1986), the prosecutor cross-examined the defendant regarding why he did not report to the police
the alleged armed robbery that was the basis of
his self-defense claim to an assault charge. In his
closing argument, the prosecutor argued that defendant's story, including his reason for not contacting the police, did not make sense. *Id.,* pp 28-
29. Our Supreme Court found that *Bobo* was inapplicable since the silence alluded to by the prosecutor, in his cross-examination and closing argument, occurred before the defendant came in contact with the police. *Id.,* p 31. The *Collier* Court
stated, pp 34-36:

> At the trial in this case, defendant testified that
> he was in fact the victim of an armed robbery
> rather than a perpetrator of an assault. He now
> contends that it would not be natural for the
> victim of an armed robbery to report the crime to
> the police. We find this position untenable. Instead, we believe it is entirely natural and expected that one who has been robbed under the
> circumstances related by the defendant would report the crime to the police. Defendant knew the

identity of the robber and the location of the robbery. It would have been natural for him to report the crime to the police, to have the assailant arrested, and to retrieve his property. The questioning and impeachment in this case were designed to cast doubt on the credibility of defendant's testimony. The prosecutor simply argued that if defendant's version were true he would have reported the crime. The prosecutor did not ask the jury to make an inference of guilt because defendant did not contact the police, but instead urged that defendant's testimony was unbelievable in light of his subsequent conduct. Accordingly, we find that no error occurred.

A footnote to the above-quoted paragraph indicates that it would have been impermissible for the prosecutor to have asked the jury to infer guilt from defendant's prearrest silence. *Id.,* p 35-36, n 3. In the instant case, the prosecutor argued in rebuttal that defendant did not report his version of the incident to the police because he was guilty. There may be little practical difference between the permissible act of asking the jury not to believe defendant's testimony and the impliedly impermissible act of asking a jury to infer defendant's guilt from his prearrest silence. However, the prosecutor's argument was improper under *Collier.*

The *Collier* Court concluded:

[T]hat to the extent *Bobo* is viable it is confined to the impeachment for and comment on silence at the time of arrest in the face of accusation.

We find that the essence of the impeachment and comment to the jury in this prearrest silence case, to the effect that the defendant did not report what according to his testimony would have been an armed robbery committed against him, constituted probative information to test the credibility of his trial testimony because it would have

been the natural thing to do. The trial judge was within his discretion in allowing such impeachment and comment, particularly in the absence of objection.

Finally, we find that the impeachment and subsequent comment to the jury did not violate either the Due Process or Self-Incrimination Clauses of the Michigan Constitution. [426 Mich 39.]

See also *Jenkins v Anderson,* 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980) (no Fifth Amendment violation for use of prearrest silence to impeach criminal defendant's credibility).

The prosecutor properly impeached defendant regarding his failure prior to his arrest to tell the police a version of the incident consistent with his self-defense theory. *Jenkins, supra; Collier, supra.* However, the prosecutor's argument that the jury must infer defendant's guilt from his prearrest silence violated defendant's right to remain silent.

This case is remanded for an evidentiary hearing as to whether defendant's right to a speedy trial was violated. If defendant was denied the right to a speedy trial, his conviction will be set aside and vacated. If defendant was not denied his right to a speedy trial, he is granted a new trial since the prosecutor violated defendant's right to remain silent.

Reversed and remanded.

Hood, P.J., concurred.

Sawyer, J. *(dissenting).* Whereas I agree with my colleagues on their analysis and resolution of the first issue as to whether or not defendant's right to a speedy trial was violated, I respectfully dissent from their resolution as to whether the prosecutor prejudiced defendant's right to a fair trial by questioning and arguing about defendant's silence to the police.

Defendant testified at trial that he had gone to the victim's home to make peace, but that the victim had come out of his house firing his handgun at defendant. Defendant went on to testify that he fired his pellet gun once in self-defense as he was driving away from the premises.

On recross-examination of defendant, the prosecutor inquired as to whether defendant had reported the incident to the police. Since self-defense was raised by defendant, and it is natural and reasonable to assume that someone who has been assaulted with a gun would report the incident to the police, defendant's failure to report the incident to the police, prior to his arrest, casts serious doubts upon his credibility and, therefore, it would be proper for the prosecutor to ask such a question and comment in his closing argument upon defendant's failure to report. *People v Collier,* 426 Mich 23; 393 NW2d 346 (1986). A careful review of the record indicates that at no time did the prosecutor make reference to the defendant's exercising his right to remain silent after he was arrested on this charge. *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), prohibits only questioning and comment which concern a defendant's exercise of his right to remain silent in the face of accusations. The rule as set forth in *Bobo* is inapplicable where the defendant has not remained silent. *People v Eggleston,* 148 Mich App 494; 384 NW2d 811 (1986). I believe that defendant's answer to the prosecutor's inquiry did not reveal any exercise by defendant of his right to remain silent and, therefore, no error has occurred.

I would remand this case for an evidentiary hearing as to whether defendant's right to a speedy trial was violated, but would hold that the prosecutor did not violate defendant's right to remain silent.